Charles K. COLE, Plaintiff,

v.

Patricia R. HARRIS, Secretary of Health, Education, and Welfare, Defendant.

No. 79–854C(B).

United States District Court, E. D. Missouri, E. D.

March 27, 1980.

Robert J. Blackwell of Mayhugh, Harris, & Blackwell, Flat River, Mo., for plaintiff.

Bruce D. White, Asst. U. S. Atty., St. Louis, Mo., Paul P. Cacioppo, Bruce R. Granger, Regional Attys., Region VII, Dept. of HEW, Kansas City, Mo., for defendant.

## MEMORANDUM

REGAN, District Judge.

This action is before the court upon the cross-motions of the parties for summary judgment pursuant to Rule 56, Federal Rules of Civil Procedure. Plaintiff Charles K. Cole commenced this action under 42 U.S.C. § 405(g) for judicial review of the final decision of the defendant Secretary of Health, Education, and Welfare denying benefits under the Social Security Act.

On January 30, 1975 plaintiff applied to establish a period of disability and to obtain disability insurance benefits under 42 U.S.C. §§ 416(i) and 423. After administrative consideration, which included an evidentiary hearing, the application was denied. On September 27, 1976, upon judicial review, the case was remanded to the Secretary for the rendering of supplemental findings.

On October 1, 1976 plaintiff applied for supplemental security income benefits under 42 U.S.C. § 1381a. This application was denied after initial consideration and after reconsideration.

On May 17, 1977 an evidentiary hearing was held upon both applications. At this hearing plaintiff and a vocational expert testified. Plaintiff was represented by counsel at the hearing. The administrative law judge rendered a written opinion on June 17, 1977 wherein he determined that plaintiff was entitled to a period of disability beginning April 10, 1974, but that plaintiff's disability ceased on June 24, 1976. The administrative law judge determined that plaintiff was entitled to a period of disability and to disability insurance benefits ending on April 30, 1976. He further determined that plaintiff was not entitled to supplemental security income benefits, because his disability ceased before the date of his application. On review the Appeals Council of the Social Security Administration determined that plaintiff's period of disability began August 10, 1974 and ceased on June 14, 1976. The Appeals Council also decided that plaintiff's entitlement to disability insurance benefits ended August 31, 1976. It affirmed the decision of the administrative law judge that plaintiff was not entitled to supplemental security income benefits. Plaintiff did not seek judicial review of this determination and the court is without subject matter jurisdiction to review it. *Califano v. Sanders*, 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977); *Janka v. Secretary of Health, Education, and Welfare*, 589 F.2d 365 (8th Cir. 1978).

On February 1, 1978 plaintiff again applied for a period of disability, disability insurance benefits, and supplemental security income benefits. The applications were denied after initial consideration and upon reconsideration. On December 14, 1978 a hearing was held before an administrative law judge. At this hearing plaintiff testified, as did a vocational expert. Plaintiff was represented by counsel. On December 27, 1978 the administrative law judge determined that plaintiff was not disabled and not entitled to benefits. The Appeals Council affirmed this decision which stands as the final decision of the defendant Secretary.

The sole issue before the court is whether the December 27, 1978 decision is supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *Timmerman v. Weinberger*, 510 F.2d 439, 441 (8th Cir. 1975). In his recent application for benefits plaintiff alleges that he became disabled on August 9, 1974 because of an injury to his neck and lower spine, at 41 years of age, and while he was working on the job as a moving company truck driver. Plaintiff testified in his November

20, 1975 evidentiary hearing that the truck he was driving had a blowout. He installed the spare tire and drove the truck back into town. He did not seek medical attention for two days. Then he was x-rayed and prescribed medication. Plaintiff was experiencing back pain at that time. He was referred to a neurological specialist and in October, 1974 a ruptured disc was surgically removed. He was discharged from the hospital with the surgical wound well healed, without medication prescriptions, and with instructions to stay at home and to not drive an automobile for one month.

Plaintiff was hospitalized for one week in March, 1975 for his complaint of chronic low back pain. There was no evidence of disc disease and the effect of the October, 1974 operation appeared to be minimal.

In April, 1975 plaintiff was examined by Dr. Michael G. Murphy for pain in his back, shoulder, neck, and head. Dr. Murphy determined that plaintiff's surgery should not disqualify him from performing his prior work as a truck driver and mover. However, he felt that plaintiff was suffering from significant depression and that he should see a qualified psychiatrist.

In May, 1975 plaintiff consulted with Dr. Wendell K. Stewart, a psychiatrist, who determined that there was no evidence of psychosis or organic neurological deficit. Dr. Stewart believed plaintiff was focusing his attention upon his symptoms and upon his belief that he was not being treated fairly.

Plaintiff continued to complain of back pain. On September 15, 1975 plaintiff was examined by Dr. Robert Ratcheson, a neurological specialist, who noted that plaintiff seemed depressed but had a full range of motion without hesitation or difficulty. In October, 1975 plaintiff was examined by Dr. Shale M. Rifkin, a general surgeon, who noted limitation of neck movement due to pain and limitation of back movement. X-rays indicated a narrowing of the C5–6 interspace with a bony bridging between the vertebrae. Dr. Rifkin's diagnosis was chronic cervical sprain and chronic lumbosacral back sprain. He believed plaintiff had a fifty percent disability.

On February 23, 1978 plaintiff was examined by Dr. Herman E. Russell, M.D., an orthopedic surgeon. Plaintiff appeared to be well developed and well nourished. He was able to walk without support, but refused to heel or toe walk. Plaintiff was able to flex his lumbar spine 80 degrees. There was tenderness and pain at the level of L5–S1, but no paraspinal muscle spasm. Straight leg raising in the sitting position was complete without any evidence of severe discomfort. Plaintiff had a full range of motion in his shoulders, elbows, wrists, and hands. His hips, knees, and ankles passed through functional ranges of motion. But plaintiff would not allow a straight raising test of either of his legs. Plaintiff's lumbosacral spine was negative upon examination. It was Dr. Russell's conclusion that plaintiff

> presents a severe functional overlay. He presents a satisfactory range of motion of the cervical spine, where he could move the cervical spine. He could also return as a driver. He should have no trouble from lifting twenty-five to fifty pounds. There is no evidence of a neurological deficit. (Tr. 377).

Plaintiff was examined by Dr. Rifkin on February 28, 1978. Plaintiff complained of headaches and neck and back pain. Plaintiff held his neck very stiffly and undressed in a very guarded fashion. There was back tenderness and plaintiff limited the movement of his back. It was Dr. Rifkin's conclusion that plaintiff shows progressive deterioration in his cervical and lumbar regions and is totally disabled for Social Security benefits.

Plaintiff was examined by Dr. George L. Hawkins, Jr., M.D., on March 21, 1978. After his examination of plaintiff and consideration of plaintiff's complaints, Dr. Hawkins concluded that plaintiff's symptoms "are functional in origin. . . ." and that plaintiff did not do well after his operation. (Tr. 381).

On June 20, 1978 plaintiff was examined by Dr. Marshall B. Conrad, M.D., who ob-

served that plaintiff moved about the office very slowly and cautiously. Motion of the cervical spine was limited "to a marked degree". (Tr. 384). Plaintiff moved his neck only through a small arc and complained of pain. Dr. Conrad observed that there was no muscle atrophy and that plaintiff did not cooperate during the examination. He observed that there was voluntary restriction of motion in the shoulders; all of plaintiff's muscles in his upper extremities were intact and functioning. He observed palpable muscle spasm in plaintiff's lumbar region. Plaintiff's straight leg raising was possible to approximately 60 or 70 degrees at which point plaintiff complained of increased back pain. The intervertebral disc spaces were of normal width; there were no areas of destruction. The sacro-iliac joints appeared to be normal. The cervical fusion appeared to be solid. Dr. Conrad concluded his report:

His degree of disability is far greater than what would be expected. Except for the palpable muscle spasm in the lumbar region, he shows little in the way of objective abnormal physical findings. One can only conclude that this man has a tremendous functional overlay, from an orthopaedic standpoint and I find little to support his complaints.

(Tr. 385).

At his hearing before the administrative law judge on December 14, 1978 plaintiff testified that he stands five feet, eleven inches tall and weighs approximately 170 pounds. His formal education extends through the eighth grade. His last employment was as a truck driver. He previously worked in automobile assembly.

He takes valium and Tylenol 3 on a regular basis. He testified that he suffers from back pain that radiates into his head. The pain is a dull pain and continuous. He occasionally gives himself heat therapy. Occasionally he wears a neck collar, but discontinues it when it irritates his neck.

Plaintiff testified that he has pain in the area of his hip joints. Above and below his hip joints there is numbness. There is numbness in the first two fingers of his right hand and sharp pain underneath his shoulderblades and into his right arm. Every time the pain in his neck becomes sharp he suffers headaches. Moving his head up or down causes pain.

Plaintiff testified that he does no housework or yardwork. He has not attempted to use a carpet sweeper at home, because he imagines that it would hurt him. He has no hobbies. He spends his days watching television, sitting on a couch or sofa, or staying in bed. Sometimes he listens to his CB radio. Other times he talks with his children. He is, however, able to drive an automobile ten or twelve miles. He is able to dress himself. He is able to bend slightly at his waist. However, he must squat to lift things off the floor. Plaintiff testified that he would be unable to stand at a job for four hours. However, he probably could stand for an hour and then sit down. He must also watch how he sits on a chair. He can sit for fifteen or twenty minutes before rising and moving around. Occasionally he will help his wife carry groceries, but that sometimes bothers him. Plaintiff testified that he could lift five pounds with his arms. Combing his hair does not hurt him. Placing something on a shelf above his head does not hurt him. He can hold a screwdriver and a pair of pliers. He can turn a bolt with a pair of pliers if it is not too tight.

Plaintiff testified that he occasionally drops cigarettes because of numbness in his fingers or a weakness in his hands when his neck is hurting him. Plaintiff testified that when he drives into town to see the doctor he must occasionally stop and rest.

Plaintiff also testified that he can handle money in substantial amounts and read and write.

Dr. William E. Durbin, Ph.D., testified as a vocational expert. The administrative law judge asked Dr. Durbin to assume that plaintiff could lift no more than ten pounds and would not be able to be on his feet all day. The vocational expert testified that this would prevent him from working as a truck driver and as an auto assembler, which he described as heavy work.

The vocational expert testified that plaintiff has acquired transferrable skills such as over-the-road truck communication, operation of a citizens band radio, and light manufacturing assembly of automotive parts. He was asked to assume plaintiff's age, background, transferrable skills, ability to drive an automobile locally to and from work. He was also asked to assume that plaintiff was limited to working where he would not have to stand all day or perform heavy lifting, where he could alternate his sitting and standing postures, where he would not be required to perform extensive walking, bending, lifting more than five to ten pounds, pulling or pushing operations, but that plaintiff could write and handle a screwdriver. Upon such hypotheses the vocational expert testified that plaintiff could perform bench assembly, packaging and inspection of automotive or electrical parts. He could also work as a dispatcher for plumbing service companies, service technicians, radio and television service technicians and maintenance crews. Such jobs exist in significant numbers in the national economy. The vocational expert testified that most of these jobs require the ability to use both hands; many of the inspection jobs do not require handling the object being inspected.

In his written opinion dated December 27, 1978 the administrative law judge reviewed the medical evidence in the record and plaintiff's testimony. He determined that "from the observation of the claimant during the hearing as well as from his testimony that his complaints are extremely exaggerated and no evidence appears that was not included in prior determinations by the Administrative Law Judges as well as the Appeals Council". (Tr. 30). It was determined that plaintiff could not perform his prior work as a truck driver for a moving company nor perform his automobile assembly work. Plaintiff has had cervical and lumbar laminectomies. However, considering his age, education, past work experience, and his residual physical abilities, he was not precluded from performing light and sedentary work as described by the vocational expert. (Tr. 32).

The record contains substantial evidence which supports the determination of the Secretary that plaintiff is not disabled. In February, 1978 Dr. Russell determined that plaintiff's impairment was due to a subjective functional overlay, not to any physical limitation. Dr. Russell said that plaintiff could return to his work as a truck driver and could lift up to fifty pounds. Dr. Rifkin's March, 1978 examination lends some credibility to plaintiff's subjective complaints. But in June, 1978 Dr. Conrad substantially corroborated Dr. Russell's conclusions. He believed that plaintiff was not cooperating in the examination. Such a factor may be considered. *Russell v. Secretary of Health, Education, and Welfare*, 402 F.Supp. 613, 620 (E.D.Mo.1975), aff'd, 540 F.2d 353 (8th Cir. 1976). Considering plaintiff's age, and the reports of Dr. Conrad and Dr. Russell, the administrative law judge was warranted in ruling the credibility of the severity of plaintiff's subjective complaints against him. When the evidence is in conflict, it is the function of the Secretary, not the Court, to resolve these conflicts. *Timmerman v. Weinberger*, 510 F.2d 439, 444 (8th Cir. 1975). The record of the hearing indicates that the administrative law judge considered plaintiff's complaints but did not believe they were as severe as alleged. He was warranted in his conclusions.

The motion of the defendant for summary judgment will be sustained; the motion of the plaintiff for summary judgment will be denied. An appropriate order will issue.