**Lawrence E. WILSON, Plaintiff,**

v.

**Patricia HARRIS, Secretary of Health, Education, and Welfare, Defendant.**

No. 79–948C(A).

United States District Court, E. D. Missouri, E. D.

March 28, 1980.

Harry J. Nichols, Patrick Cummings, St. Louis, Mo., for plaintiff.

Anne T. Shapleigh, Asst. U. S. Atty., St. Louis, Mo., for defendant.

## MEMORANDUM

HARPER, District Judge.

Plaintiff Lawrence E. Wilson commenced this action under the Social Security Act, 42 U.S.C. § 405(g), for judicial review of the final decision of the defendant Secretary of Health, Education, and Welfare denying disability insurance benefits. The case is before the court upon the motion of the defendant for summary judgment pursuant to Rule 56, Federal Rules of Civil Procedure. In support of her motion the defendant has filed a copy of the administrative record.

On November 4, 1975 plaintiff applied for a period of disability and disability insurance benefits, alleging that he became disabled on June 15, 1974 due to a bad back, a nerve condition, and high blood pressure. His application was denied after administrative consideration, which included an evidentiary hearing before an administrative law judge. Plaintiff initially sought judicial review in this court, but later voluntarily dismissed the action without prejudice before a determination was made. The denial of that application is not before the court at this time. Furthermore, the Court is without subject matter jurisdiction to review any administrative determination not to reopen the prior administrative proceedings. *Califano v. Sanders*, 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977); *Janka v. Secretary of Health, Education, and Welfare*, 589 F.2d 365 (8th Cir. 1978).

On December 14, 1977 plaintiff again applied for a period of disability and disability insurance benefits under 42 U.S.C. §§ 416(i)

and 423. He alleged that he became disabled on July 15, 1974 on account of muscle spasms in his spine, arthritis, high blood pressure, a nervous condition, and a pinched nerve in his back. An evidentiary hearing was held before another administrative law judge on this application. At this hearing plaintiff and a vocational expert testified. Plaintiff was represented by counsel. Following the hearing the administrative law judge determined that plaintiff, who was then 58 years of age, was unable to perform his former jobs of truck driver and heavy equipment operator, but was able to perform semi-skilled work. Such work included automotive parts assembly, factory material handling jobs, and factory assembly and inspection positions. For this reason, the administrative law judge determined that plaintiff was not disabled within the meaning of the Social Security Act. *See* 42 U.S.C. § 423(d).

Judicial review of this final decision is limited to whether it is supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *Russell v. Secretary of Health, Education, and Welfare*, 540 F.2d 353, 356–57 (8th Cir. 1976). A review of the administrative record is necessary to determine this issue.

During his second evidentiary hearing plaintiff testified that he was born on November 3, 1920. He stands six feet three inches tall and weighs approximately 215 pounds. His formal education extended to the eighth grade. He testified that substantially all of his employment has been as a truck driver and as an operator of heavy equipment. For eighteen years plaintiff served in the military working primarily in motor pool repair. He has average ability to read and write. He testified he does not read newspapers because he has "real bad eyes". (Tr. 32).

He testified that following his previous evidentiary hearing he was driving a front-end loader and had an accident while traversing a bank. He testified that he worked only approximately two weeks at this job. This accident did not result in any injury to him.

Plaintiff testified that he regularly visits the Veterans Administration hospital because of high blood pressure, nerves, and a hip condition. He was told by a physician that a hip joint replacement operation would cause more pain than he is suffering now. Therefore, he elected in 1977 not to undergo the surgery. He was issued a cane and directed to walk, but walking caused pain. Plaintiff testified that his high blood pressure remains under control with medication. He has been prescribed Valium for his nerves; on some days he does not take any Valium tablets. Plaintiff testified that he is an alcoholic, but has not had a drink in over a year.

Plaintiff testified that he is taking medication for arthritis in his back, his knee, and both ankles. Walking up steps is very painful. He does no garden work because of the pain and does not wash dishes. He spends his time watching television. After he broke his eyeglasses he could not afford a regular eyeglass prescription. Therefore, he purchased a pair of non-prescription department store magnifying lens glasses. He testified that they help but are not "real good". (Tr. 43). He is currently being treated at the hospital for his eyes. A battery exploded in his face several years ago and this is the cause of his eye problems.

Plaintiff testified that, when he bends over, he has difficulty straightening. He can stand and walk, if he does not travel far. Plaintiff testified that he has received offers of work as a truck driver, but has refused them. He is able to hold an object weighing twenty pounds, if he does not have to bend over and lift it. He testified that he did not believe he can grip items in his hands very well. He is able to hold a pencil but is unable to write more than his name easily. When he writes he must hold his right hand with his left hand.

Plaintiff testified that he suffers from occasional migraine headaches which last approximately one half hour. He testified that he becomes very nervous, even from watching television. He has no social life. He also suffers chest pain, but without shortness of breath.

At the hearing the administrative law judge inquired of William Durbin, a vocational expert. Mr. Durbin testified that he had been present during plaintiff's testimony and had reviewed the medical evidence in the administrative record. The administrative law judge asked him to assume that plaintiff would not be able to lift over fifteen pounds, twist, or engage in extensive physical stress. Upon that basis the vocational expert testified that plaintiff could not work as a truck driver or heavy equipment operator.

The vocational expert testified that plaintiff's military background suggested that he had transferrable supervisory skills, and skills in automotive and mechanical work. The administrative law judge then asked the vocational expert to assume plaintiff's age, limited formal education, transferrable employment skills, and the following physical function limitations: an inability to stand for more than a half hour without being able to sit down; an inability to bend, reach to floor level to pick up objects, or to twist; an inability to walk farther than his immediate area; an inability to lift more than fifteen pounds; an inability to perform extensive reaching above his shoulders; an inability to climb steps or walk at heights due to his hypertension; an inability to use his feet for operating foot pedals extensively; a lack of fine dexterity in his hands; and a visual impairment for close work. Upon this hypothesis the vocational expert testified that plaintiff could perform auto and truck parts assembly. This is bench assembly or packaging of such items as carburetors and starter switches. The carburetors weigh up to fifteen pounds and the switches weigh less than a few ounces. No more than ten to fifteen percent of these items would require good vision for close work. Plaintiff could also operate a jitney tow motor for moving material around a manufacturing plant. These jobs usually require periodic dismounting and remounting of the motors. Plaintiff could also work as a motor pool supervisor. However, the jitney operator and motor pool supervisor jobs may require more walking than the hypothetical question allowed.

Also, plaintiff could work as an assembler, packager, and as a final inspector. These jobs exist in significant numbers in the national economy.

Assuming plaintiff had a nervous condition which is related to his being in a crowd, plaintiff could perform these previously described kinds of production jobs because there is a minimal amount of interaction with other persons on the assembly line. Later in his testimony the vocational expert ruled out any reference to supervisory positions.

The medical evidence in the administrative record includes the report of Dr. Joseph A. Murney, M.D., dated October 9, 1973 which indicates that plaintiff passed a physical examination for a truck driver's license. At that time he had twenty-twenty vision in both eyes and blood pressure of 134/86.

Plaintiff was admitted to the Veterans Administration hospital on October 29, 1975 for nervousness and hypertension. The medical record indicates that plaintiff had been previously hospitalized for nervousness. His blood pressure at this time was unremarkable. Plaintiff complained of low back pain, but x-rays indicated the absence of disc disease. There was mild degenerative changes in the thoracic vertebrae. He improved with whirlpool treatments and exercises. He was diagnosed as having a chronic low back pain, a passive dependent personality with mild depressive neurosis, a history of alcoholism, and controlled high blood pressure. It was the conclusion of Dr. F. Ross, M.D., that plaintiff objected to being discharged from the hospital because of his desire for compensation and a pension.

On March 11, 1976 at the Veterans Administration hospital plaintiff complained of a pinched nerve in his back, and of a nervous condition.

On May 8, 1976 Dr. Thomas K. Mangelsdorf, M.D., a psychiatrist, administered a mental status examination, psychological tests, and a neurological examination. His diagnosis was (1) a mild anxiety neurosis in an addiction-prone individual; (2) socio-

pathic personality disorder; and (3) psycho-physiological cardiovascular disorder, hypertension. He concluded, however, that there was no significant neuropsychiatric abnormality and that plaintiff is competent to handle his own funds.

On October 22, 1976 the Missouri Division of Veterans Affairs reported to plaintiff that a review of his Veterans Administration file and military records indicated the presence of hypertension during the late 1950's, but not before that period.

The Veterans Administration hospital record of July 30, 1976 indicated that plaintiff had a blood pressure of 138/96. On August 5, 1976 plaintiff exhibited high blood pressure and was taking medication. On August 12, 1976 he complained of headaches and low back pains; a small area of tenderness was found. Plaintiff also complained of headaches in January, 1977; his hypertension condition was noted but believed to be controlled. On March 7, 1977 plaintiff complained of arthritic pain in his knees, back and hands. It was the doctor's belief that plaintiff's chronic back pain was related to depressive neurosis.

On April 9, 1977 battery acid got into plaintiff's eye. He was treated at a local hospital and at the Veterans Administration clinic. Mild inflammation of the right sclera and cornea was noted. No disabling eye impairment is seen in the hospital examination report. On July 19, 1977 plaintiff's eyes were examined and his vision scored at 20/70 and 20/50.

On August 8, 1977 plaintiff complained of low back pain. His blood pressure was 180/110. Medication was seen to ease his pain and lower his blood pressure.

On September 24, 1977 plaintiff's lumbar spine was x-rayed and Dr. John Shields, M.D., concluded that plaintiff's vertebrae were normally aligned. There was no evidence of fracture or dislocation. During this month plaintiff indicated that his back pain had been relieved by medication. His blood pressure was lower than before.

On October 3, 1977 plaintiff had chest pains, infected kidneys, and vomiting.

Again on November 11, 1977 he complained of low back and abdominal pain. A barium enema examination indicated diverticulosis.

In January, 1978 plaintiff again complained of sore kidneys and a pinched nerve in his lower back. His blood pressure measured at 140/90, 120/80, and 150/90 during January. His eyes tested at 20/40 and 20/70. Hip surgery was considered. On February 21, 1978 plaintiff was issued a cane. The medical record indicates that this completed his hip treatment without any need for followup. The record also indicates that plaintiff had not been drinking for six months. (Tr. 229). In March, 1978 plaintiff's hip was put through a range of motion. There was flexion to ninety degrees and pain on rotation.

On March 28, 1979 Dr. John B. Crane, M.D., a psychiatrist, reported his evaluation of plaintiff. Plaintiff's history included a nervous breakdown in 1964 with occasional hospitalization for two years. Dr. Crane's conclusions were as follows:

Mental Status evaluation reveals this to be a well-oriented, alert man who appears his stated age. His sensorium is clear. He complains of nervousness and tension, but does not appear to be particularly anxious. There is no indication of significant depression; there is no indication of any thought disorder or organic brain syndrome. When asked to summarize his problems, he says that he has some trouble with his remembering and he notes that he cannot work because of his ankles, his bad back, his bad hip, his inability to hold a pencil and because of his arthritis, etc.

This man appears to have some degree of anxiety and also it would appear that he is an alcoholic who is presently in remission. He has a number of somatic symptoms, but I do not feel that I can say at this time, that he is disabled on a psychiatric basis.

(Tr. 277).

On April 4, 1978 plaintiff was examined by Dr. Marshall B. Conrad, M.D., an orthopedic surgeon. After a careful examination of plaintiff Dr. Conrad reported that

he shows nothing in the way of objective abnormal physical findings to support his complaints. This man told me that the physicians at the V.A. hospital are considering a total hip replacement on the left, but the x-ray appearance of the hips does not bear this out. He shows no evidence of an aseptic necrosis, I think that the faint cystic area that is noted on x-ray are probably of no consequence, I can find nothing from an orthopaedic standpoint to support his complaints.

(Tr. 279).

Medical reports on April 20 and June 13, 1978 indicate no end organ damage resulting from plaintiff's hypertension. This condition seemed to be well- controlled without symptoms.

In his written opinion of January 12, 1979 the administrative law judge considered plaintiff's subjective complaints of arthritis in back and legs, pain, high blood pressure, poor vision, nervous condition, and alcoholism. He found that plaintiff had sufficient right hand dexterity to hold and use a screwdriver. He concluded that not all of plaintiff's substantial gainful activity is precluded by his physical limitations. Supporting these conclusions are the reports of Drs. Conrad and Crane, and the testimony of the vocational expert. Clearly, Dr. Conrad's report indicates that plaintiff's complaints of disabling physical impairment are without substance. Dr. Crane believed that plaintiff does suffer some degree of anxiety and is an alcoholic in remission, but he did not believe that these conditions were disabling. No medical or other evidence indicated that plaintiff's alcoholic condition in any way affects his ability to work. The mere existence of a mental disturbance is not by itself disabling. *Russell v. Secretary of Health, Education, and Welfare*, 402 F.Supp. 613, 620 (E.D.Mo.1975), aff'd, 540 F.2d 353 (8th Cir. 1976).

In the opinion of the Court the decision of the Secretary is supported by substantial evidence in the record as a whole. Therefore, the defendant Secretary of Health, Education, and Welfare is entitled to summary judgment. The clerk will enter final judgment to this effect.