Oscar W. JANKA, Appellee,

v.

SECRETARY OF HEALTH, EDUCATION AND WELFARE, Appellant.

No. 78–1055.

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 12, 1978.

Decided Dec. 29, 1978.

Alan M. Grochal, Atty., Dept. of HEW, Social Security Div., Baltimore, Md., for appellant. Barbara Allen Babcock, Asst. Atty. Gen., Andrew W. Danielson, U. S. Atty., Elizabeth A. Egan, Asst. U. S. Atty., Minneapolis, Minn., and Natalie R. Dethloff, Baltimore, Md., on brief.

David A. Stofferahn of Grose, Von Holtum, Von Holtum, Sieben & Schmidt, Minneapolis, Minn., for appellee.

Before ROSS and HENLEY, Circuit Judges, and MARKEY,* Chief Judge.

ROSS, Circuit Judge.

Plaintiff Oscar W. Janka sought review in the district court of a final decision by the Secretary of Health, Education and Welfare denying his claim for disability insurance and supplemental security income benefits. 42 U.S.C. § 405(g). The district court[1] reversed the Secretary's decision, and the Secretary brought this appeal. We reverse the judgment of the district court.

Mr. Janka filed his first application for social security disability benefits on September 22, 1972, alleging that he became unable to engage in any substantial gainful activity as of March 14, 1972, because of respiratory and blood disorders. His application was disallowed and again denied upon reconsideration. Plaintiff then submitted a request for a hearing. 20 C.F.R. § 404.917. However, he declined to appear at the hearing and his claim was denied on January 14, 1974, on the basis of the evidence in the record. Plaintiff sought no further review, and the denial of his claim on January 14, 1974, therefore became a final decision of the Secretary. 20 C.F.R. § 404.940.

On March 28, 1975, plaintiff submitted a second claim for benefits, alleging the same impairments asserted in his original application. Moreover, he again claimed that his disability had originated on March 14, 1972. This claim was denied, and plaintiff requested a hearing.

---

* The Honorable Howard T. Markey, Chief Judge, United States Court of Customs and Patent Appeals, sitting by designation.

1. The Honorable Miles W. Lord, United States District Judge for the District of Minnesota.

The hearing examiner ruled that the decision of January 14, 1974, denying plaintiff's first application was final and res judicata as to any disability claimed prior to that date. He also concluded that plaintiff had failed to present any "new and material evidence" providing "good cause" to reopen and revise the January 1974 decision. 20 C.F.R. § 404.957(b); 404.958(a). With regard to the period covered by plaintiff's second application, the examiner determined on the basis of the evidence presented at the hearing that plaintiff had not become disabled since January 14, 1974. The Appeals Council affirmed the examiner's findings.

## I.

The district court reversed the Secretary without distinguishing between the periods covered by plaintiff's first and second applications. By upholding plaintiff's claim for benefits dating from the alleged onset of disability in March 1972, the court in effect reopened the Secretary's previous final decision on plaintiff's first application covering the period March 14, 1972, to January 14, 1974.

▮▮▮ A decision by the Secretary which has become final is res judicata as to subsequent applications involving the same facts and issues existing at the time of the first decision. *Stuckey v. Weinberger,* 488 F.2d 904, 911–12 (9th Cir. 1973); *Adkins v. Califano,* 430 F.Supp. 448, 449–50 (S.D.W.Va. 1977); *Gray v. Mathews,* 421 F.Supp. 364, 366 (N.D.Cal.1976). Under 20 C.F.R. § 404.-937(a) the Secretary may refuse to reopen a prior determination and may dismiss a claim on the basis of res judicata. When the Secretary dismisses a claim on the basis of § 404.937(a), his decision is not reviewable by the district courts. *Califano v. Sanders,* 430 U.S. 99, 107–109, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977).[2] *See also Teague v. Califano,* 560 F.2d 615, 618 (4th Cir. 1977):

> [T]he Supreme Court held in *Sanders, supra,* that judicial review of applications for disability insurance benefits is authorized solely by § 205(g) of the Act, *and that this Section does not permit judicial review of agency decisions refusing to reopen a claim proceeding.* (Emphasis added.)

We therefore hold that the district court erred in awarding benefits for the period covered by plaintiff's first application.

## II.

▮▮▮ The sole remaining question on appeal is whether the Secretary's finding that plaintiff has not become disabled since January 14, 1974, is supported by substantial evidence in the administrative record as a whole.[3]

---

**2.** Respondent contends that * * * the Social Security Act itself, specifically § 205(g), should be construed to authorize judicial review of a final decision of the Secretary not to reopen a claim of benefits. All Courts of Appeals that have considered this contention have rejected it. We also agree that § 205(g) cannot be read to authorize judicial review of alleged abuses of agency discretion in refusing to reopen claims for social security benefits.

* * * * * *

This is not one of those rare instances where the Secretary's denial of a petition to reopen is challenged on constitutional grounds. Respondent seeks only an additional opportunity to establish that he satisfies the Social Security Act's eligibility standards for disability benefits. Therefore, § 205(g) does not afford subject-matter jurisdiction in this case.

*Califano v. Sanders,* 430 U.S. 99, 107–109, 97 S.Ct. 980, 985, 51 L.Ed.2d 192 (1977).

**3.** The court is to be guided by the following rules in reviewing the Secretary's conclusions: (a) the claimant has the burden of establishing his claim; (b) the Act is remedial and is to be construed liberally; (c) the Secretary's findings and the reasonable inferences drawn from them are conclusive if they are supported by substantial evidence; (d) substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; (e) it must be based on the record as a whole; (f) the determination of the presence of substantial evidence is to be made on a case-to-case basis; (g) where the evidence is conflicting it is for the Appeals Council on behalf of the Secretary to resolve those conflicts; (h) the statutory definition of disability imposes a three-fold requirement (1) that there be a medically deter-

Mr. Janka was born on April 13, 1927, and has a seventh grade education. He worked for nineteen years as a ham boner in a meat packing plant until March 14, 1972. He had previous employment as an arc welder and a fire fighter.

Plaintiff testified that he experiences shortness of breath and pain from exertion, that he no longer performs activities such as fishing and hunting and no longer drives a car. However, he did drive a car until March 1976, four years after the date he alleges he became disabled. When referred for vocational rehabilitation, plaintiff declined to go. He also refused to permit the psychiatric evaluation requested by the hearing examiner.

Plaintiff's primary complaint is an obstructive lung condition. On the question of the severity of this disease, there is a conflict in the medical evidence.

Dr. James E. Jenson, who has treated plaintiff since 1969, reported on April 3, 1975, that plaintiff has a "severe obstructive lung disease with moderate hyperinflation, mild restrictive lung disease, moderate hypoxemia with normal ventilation at rest." Concerning the severity of plaintiff's lung disease, Dr. Jenson stated that "the patient may be at respiratory limit and near cardiac limit with mild to moderate * * * exertion. Significant progressive decrease in pulmonary function. Permanent[ly] disabled." In June 1975 Dr. Jenson reported "no significant change in [Janka's] pulmonary and heart condition since last report of March 3, 1975."

On the other hand, the attending physician at the cardiopulmonary laboratory of Mt. Sinai Hospital interpreted plaintiff's pulmonary function tests as follows: On January 30, 1975, he found "[m]ild to moderate irreversible obstructive lung disease. No evidence of any significant restrictive lung disease. Moderate hypoxemia * * Acid/Base data is within normal physiological range." On February 4, 1975, he characterized the obstructive lung disease as "severe" and noted "[s]ignificant decrease in pulmonary function since test of 30 Jan. 75." However, on February 6, 1975, he described the obstructive lung condition as "mild" and noted "[s]ignificant improvement since complete Pulmonary Function Testing of 4 Feb. 75."

Dr. Paul Hamann's statement of February 4, 1975, recounts plaintiff's complaints of pain and shortness of breath. However, his examination revealed that "the heart is normal. Examination of the lungs reveals normal breath sounds and no rales, rhonchi, or wheezes. The full expiratory movement seems abbreviated." On February 12, 1975, he reported that plaintiff "underwent pulmonary function study evaluation. Initial functions revealed severe obstructive lung disease which was markedly decreased from a previous test done * * * on 1–30–75. * * * [F]ollow up pulmonary functions revealed an improvement to near normal in his pulmonary functions."

■ The results of the pulmonary function studies were submitted to Dr. William Trow, a medical advisor [4] who explained

minable physical or mental impairment which can be expected to [result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months], (2) that there be an inability to engage in any substantial gainful activity, and (3) that the inability be by reason of the impairment; (i) such substantial gainful activity is that which is both substantial and gainful and within the claimant's capability, realistically judged by his education, training, and experience; (j) the emphasis is on the particular claimant's capabilities and on what is reasonably possible, not on what is conceivable; and (k) it is not the duty or the burden of the Secretary to find a specific employer and job for the claimant but, instead, some effort and some ingenuity within

the range of the claimant's capacity remains for him to exercise.
*Brinker v. Weinberger,* 522 F.2d 13, 17 (8th Cir. 1975).

4. The use in social security disability determinations of a medical advisor, i. e., "an expert who does not examine the claimant but who hears and reviews the medical evidence and who may offer an opinion," was expressly approved in *Richardson v. Perales,* 402 U.S. 389, 396, 408, 91 S.Ct. 1420, 1425, 28 L.Ed.2d 1842 (1971). The opinion of such an advisor, even if different from that of an examining physician, may constitute substantial evidence to support a finding of nondisability. *Gaultney v. Weinberger,* 505 F.2d 943, 945 (5th Cir. 1974).

their significance in lay terminology at the hearing examiner's request. He characterized plaintiff's impairment as "mild to moderate obstructive pulmonary impairment with 2° restriction, and with mild hypoxemia. * * * Patient has an obstructive pulmonary impairment with secondary restrictive impairment. * * * Diffusion impairment is mild. * * * Interpretation would have to be made on blood gas and diffusion studies. I believe that the patient could do 'light' work. He could stand, bend, walk, stoop, squat, lift, climb stairs, use public transportation or drive a vehicle as well as the average person who can do 'light' work. As regards environment, he should avoid smoke, noxious fumes, and dusty surroundings."

Conflicts in the evidence are to be resolved by the Secretary, not the courts. *Laffoon v. Califano*, 558 F.2d 253, 254 (5th Cir. 1977); *Hassler v. Weinberger*, 502 F.2d 172, 177 (7th Cir. 1974); *Russell v. Secretary of Health, Education and Welfare*, 402 F.Supp. 613, 620 (E.D.Mo.1975), aff'd, 540 F.2d 353, 356 (8th Cir. 1976). Moreover, medical opinions on the ultimate issue of disability are not binding on the Secretary. While the fact that plaintiff suffers from a painful, obstructive lung disease is not in dispute, the ultimate question of whether this condition is so severe as to be disabling is for the Secretary to determine. The examiner concluded that plaintiff "is experiencing mild to moderate obstructive and restrictive lung disease with some diffusion impairment, but that from a pulmonary standpoint [he] has the residual functional capacity to engage in 'light' work activity on a sustained basis."

Concerning the numbness described by plaintiff, Dr. Jenson found in June 1975 that "he is not feeling numbness in his hands, there is no neurological deficit evident." Examinations by Dr. Lowell H. Baker, a neurologist, on February 3, 1975, revealed that "[m]otor examination is intact with no weakness in the upper or lower extremities, especially distally. No atrophy or abnormal movements are noted. Sensory examination-deep sensation to toe position or vibratory position is normal. The patient does seem to have a decrease in touch and painful stimuli about 4 inches about the wrists and knees bilaterally. Coordination on finger to nose and heel to knee testing is normal. Romberg exam and gait are intact." There is no medical evidence in the record which would suggest that plaintiff's numbness is severe or that it has impaired his ability to function.

The record also contains a one-sentence report by Dr. H. E. Richardson that plaintiff has Alpha 1 Trypsin Deficiency, apparently a blood disorder, and that as a result he is totally disabled. However, no clinical or laboratory findings were offered in support of this finding and the basis for the diagnosis is not revealed.

We hold that the hearing examiner was entitled to discount Dr. Richardson's opinion. "Medical reports * * * unsupported by any medically acceptable clinical or laboratory diagnostic data or findings, may be properly discounted by the trier of fact." *Laffoon v. Califano, supra*, 558 F.2d at 256. "[T]he administrative law judge may give whatever weight he deems warranted to a physician's statements which are devoid of specific and complete clinical evidence." *Russell v. Secretary of Health, Education and Welfare, supra*, 402 F.Supp. at 619. *Accord, Dressel v. Califano*, 558 F.2d 504, 506 (8th Cir. 1977); *Kirkland v. Weinberger*, 480 F.2d 46, 49 (5th Cir.), cert. denied, 414 U.S. 913, 94 S.Ct. 255, 38 L.Ed.2d 155 (1973); 20 C.F.R. § 404.1526. Moreover, none of the other physicians, including the doctor who has treated plaintiff since 1969, reported this condition.

Phillip B. Haber, a vocational expert, studied the medical reports, some of which include plaintiff's subjective complaints,[5] and listened to plaintiff's testimony at the

5. Plaintiff contends that the vocational expert was directed to disregard plaintiff's subjective complaints. However, examination of the record reveals no such instruction. Mr. Haber was told to disregard "any subjective statements *of doctors* as to whether the claimant is or is not disabled." As indicated previously, the ultimate issue of disability must be determined by the examiner.

**370**

hearing. On the basis of this evidence, he concluded that plaintiff could not perform any of the jobs he has previously held. However, he also concluded that Mr. Janka had the capacity and skills to perform light work in a clean environment, such as food service assistant, machine dishwasher or bus boy at a hospital, or a clerk in a private mailroom.

▪ The examiner was entitled to consider the testimony of the vocational witness even though the witness had not interviewed plaintiff and based his conclusions on the records and the testimony presented at the hearing. *See Kyle v. Cohen*, 449 F.2d 489, 491–92 (4th Cir. 1971). The Secretary is not required to find that a specific job opening is available to a claimant. *Timmerman v. Weinberger*, 510 F.2d 439, 442–43 (8th Cir. 1975). 42 U.S.C. § 423(d)(2)(A) precludes a finding of disability if the claimant can engage in substantial gainful work which exists in the national economy, *"regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work."* (Emphasis added.)

▪ We hold that the Secretary's findings are supported by substantial evidence in the record as a whole, and that the district court erred in reversing the Secretary's decision. We therefore reverse the judgment of the district court and remand with directions to the district court to enter judgment affirming the decision of the Secretary of Health, Education and Welfare.