**Barbara BROWN, Plaintiff,**

v.

**Patricia Roberts HARRIS, Secretary of the Department of Health and Human Services, Defendant.**

**No. 80–4066–CV–C–H.**

United States District Court,
W. D. Missouri, W. D.

Aug. 31, 1982.

400

David Kite, Mid-Missouri Legal Services Corp., Jefferson City, Mo., for plaintiff.

Judith Strong, Asst. U. S. Atty., Kansas City, Mo., for defendant.

## OPINION AND ORDER

ELMO B. HUNTER, Senior District Judge.

Plaintiff brings this action for review of a final decision of the Secretary of Health and Human Services, pursuant to 42 U.S.C. § 405(g). The Secretary denied plaintiff's application for disability insurance benefits and supplemental security income. For the reasons discussed below, the Court affirms the decision of the Secretary.

### Procedural History

Plaintiff filed her application for disability insurance benefits and for supplemental security income on May 7, 1979.[1] After initial denial of benefits, plaintiff requested and was granted a hearing before an ad-

---

1. In the briefs before this Court, the plaintiff conceded that the present income of her husband renders her ineligible for supplemental security income benefits. Brief in Support of

Plaintiff's Claim for Relief, p. 2. Accordingly, the Court will address only the plaintiff's claim that she is eligible for disability insurance benefits.

ministrative law judge (ALJ). At the hearing, on November 9, 1979, the plaintiff appeared and testified. In addition, medical reports from various doctors were admitted into the record.

On December 31, 1979, the ALJ rendered his decision, finding plaintiff was not entitled to a period of disability or to disability benefits. Plaintiff requested that the Appeals Council review the ALJ's decision. The Appeals Council concluded there was no basis for granting the requested review and the hearing decision became the final decision of the Secretary and subject to this Court's review under 42 U.S.C. § 405(g).

### Statutory Provisions

The pertinent statute states as follows:

(a)(1) Every individual who—

    (A) is insured for disability insurance benefits . . . ,

    (B) has not attained the age of sixty-five,

    (C) has filed application for disability insurance benefits, and

    (D) is under a disability (as defined in subsection (d) of this section),

shall be entitled to disability insurance benefits.

\*    \*    \*    \*    \*    \*

(d)(1) The term "disability" means—

    (A) inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months;

\*    \*    \*    \*    \*    \*

(2) For the purposes of paragraph (1)(A)—

    (A) an individual . . . shall be determined to be under a disability only if his physical or mental impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

    For purposes of the preceding sentence . . . , "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

\*    \*    \*    \*    \*    \*

(3) For purposes of this subsection, a "physical or mental impairment" is an impairment that results from anatomical, physiological or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

42 U.S.C.A. § 423 (1974 & Supp.1982).

### Standard of Review

Under 42 U.S.C. § 405(g), judicial review of the Secretary's decision is limited to a determination of whether there is substantial evidence to support the decision. Substantial evidence has been defined by the Supreme Court as "what a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). See also, *Celebrezze v. Bolas,* 316 F.2d 498, 501 (8th Cir. 1963).

In determining whether the Secretary's findings are supported by substantial evidence, this Court is required to consider the entire record. The Secretary's findings and reasonable inferences drawn from them are conclusive if they are supported by substantial evidence. *Klug v. Weinberger,* 514 F.2d 423 (8th Cir. 1975); *Fitzsimmons v. Mathews,* 491 F.Supp. 423, 425 (W.D.Mo. 1980).

Although the general rule is that the applicant for disability benefits has the burden of proving disability, the cases have broken this burden into two parts. The initial burden is on the claimant to show that he suffers from an impairment which

prevents him from engaging in his former work activity. Once he proves this, the burden of going forward with the evidence and of persuasion shifts to the Secretary to prove that there is some other type of substantial gainful activity which the claimant could perform. *Brinker v. Weinberger,* 522 F.2d 13, 17 (8th Cir. 1975); *Timmerman v. Weinberger,* 510 F.2d 439, 443 (8th Cir. 1975); *Fitzsimmons v. Mathews,* 491 F.Supp. 423, 425 (W.D.Mo.1980); *Haskins v. Finch,* 307 F.Supp. 1272, 1283 (W.D.Mo. 1969).

■ There are two methods by which the determination of whether there is some other type of substantial gainful activity which the ·claimant could perform is made. The traditional method is to have a vocational expert testify at the hearing. An alternative method is to follow the Medical-Vocational Guidelines, often called the "grid regulations," contained in Appendix 2 of Subpart P of Part 404, 20 C.F.R. § 404.1501 *et seq.* (1982). The use of these regulations was recently upheld by the Eighth Circuit Court of Appeals in the consolidated cases *McCoy v. Schweiker, Stack v. Schweiker,* and *Desedare v. Schweiker,* 683 F.2d 1138 (1982) (hereinafter *McCoy*). The ALJ in plaintiff's case based his decision on the grid regulations.

In *McCoy,* the Eighth Circuit summarized the steps outlined in the regulation for the use of the grids.

First, a determination is made whether a disability claimant is currently engaged in substantial gainful activity; if so, he must be found not disabled. If the claimant is not engaged in substantial gainful activity, the next question is whether he is suffering from a severe impairment, defined as one that significantly limits the ability to perform basic work-related functions. If a severe impairment is not found, the claimant must be found not disabled. If there is a severe impairment, and it is one listed in Appendix 1 to Subpart P, the claimant is found disabled on the medical evidence alone. If the impairment is not listed in Appendix 1, the next inquiry is whether the claimant

can perform relevant past work. If he can, a finding of no disability is required. Finally, if the claimant cannot perform relevant past work, the question then becomes whether he can nevertheless do other jobs that exist in the national economy, despite his having a severe impairment that prevents return to his previous work. At this stage, the ALJ must determine the claimant's residual functional capacity (RFC), that is, what he can still do physically even with his impairment, and also the claimant's age, education, and relevant work experience—the latter three findings being referred to as vocational factors, as opposed to RFC, which is a medical factor. The criteria of age, education, and work experience are relevant because the statute specifies them in defining disability, 42 U.S.C. § 423(d)(2)(A). If the ALH's findings as to RFC, age, education, and work experience fit any of the combinations of those criteria contained in the Tables in Appendix 2 to Part 404, then the ALJ must reach the conclusion (either "disabled" or "not disabled") directed by the relevant Rule or line of the applicable Table.

*McCoy, supra,* at 1141–42. See also 20 C.F.R. § 404.1520 (1982).

■ In his decision, the ALJ outlined those same steps. He specifically determined that plaintiff's impairments were slight. Because a severe impairment was not found, the ALJ could have completed his analysis at that point. Under *McCoy* it was not necessary for him to also apply the grid regulations in order to deny benefits. The ALJ, however, also applied the grid regulations. First he found that plaintiff's impairments did not restrict her physical ability to perform light to medium work and that she retained the residual functional capacity to perform light to medium work as defined in the regulation. "Light work" is defined as follows:

Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds. Even though the weight lifted may be very little, a job is in this catego-

ry when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone could do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567.

The ALJ also found that plaintiff was classified as younger individual and a person with a high school education or above. Applying these factors to the grid for persons whose residual functional capacity was limited to light work, the ALJ found the plaintiff was not disabled.[2]

Under *McCoy,* once the claimant has borne the burden of proving he cannot return to his past work because of severe impairment, the burden shifts to the Secretary to prove with substantial evidence that the applicant is a member of one of the groups described in the grid, including the duty to establish by medical evidence that the claimant has the requisite RFC. *McCoy, supra,* at 1147.

The question then before this Court is whether there is substantial evidence to support the ALJ's finding that plaintiff could perform light work, that plaintiff was a younger individual as defined in the regulations, that plaintiff had high school education, and that plaintiff's previous work level was unskilled.

### Statement of Facts

According to the testimony adduced at the hearing, plaintiff was born on October 27, 1938. She has a tenth grade education and has received a GED. Although plaintiff completed a course on typing, bookkeeping and filing, she was never able to

find a job in that field. Most of her work experience has been as a nurse's aid and nurse technician. She received on-the-job training for these positions and has worked in the field for approximately thirteen years. Plaintiff also worked briefly as a sales clerk in a T, G & Y store.

In her application for benefits, plaintiff listed her disability as low lumbar strain. She stated that her back problem was initially caused in June of 1978, when she was lifting a patient at work. She missed eight to ten weeks of work over the period because of back problems.

Plaintiff described her job as a nurse's aid as very heavy work in that she was required to move and lift patients. In September 1978, she transferred from her job at Russ Rehabilitation Center because of the lifting involved. Her last job was at an eye clinic. Although she agreed that the work at the eye clinic was light, she claimed that the long hours of standing caused her back to hurt more. She stated that the longer she was on her feet, the more her back hurt. The pain in her back also causes her legs to hurt. In April of 1979, plaintiff quit work at the clinic because of back pain, and she considers herself unable to work since that time. Plaintiff claims she cannot stand and work for a regular eight-hour day even with nurse's shoes and support hose.

Although plaintiff also has high blood pressure, it was well controlled by medication at the time of the hearing. The only medication plaintiff was using for pain at that time was aspirin.

### Medical Evidence

On February 12, 1979, plaintiff was admitted at Calaway Memorial Hospital for chronic low back pain. The medical report of Dr. Kathleen Ellsberry states that plaintiff's back pain was clearly exertion related, and that the pain radiated down both legs. There were no associated paresthesis or

---

2. The ALJ stated that he was applying Rule 202.13, Table No. 2 of Appendix 2, Subpart P. Rule 202.13, however, is for persons closely approaching advanced age. Because plaintiff was under 49 at the time, she was properly described as a younger individual under Rule 202.20. Under either Rule 202.13 or 202.20, plaintiff would not be under a disability.

shooting pains. On admission, plaintiff's back showed some mid line tenderness without muscle spasm. There was some tenderness left of the mid line in the lumbar area also but no scoliosis noted. Plaintiff was placed on ten pounds of pelvic and lumbar traction with bed rest. The doctor's initial impression was that plaintiff's back pain was chronic due to sequillae from an acute strain several months earlier. Plaintiff was given heat treatments, valium and tylenol for pain. Her back improved subjectively while in the hospital and she was released February 22, 1979. The diagnosis on discharge was as follows:

1.  Chronic low back pain. .
2.  Hypokalemia.
3.  RUQ breast mass, right breast.
4.  Hypertension, under good control.
5.  History of recurrent urinary tract infection.
6.  Iron deficiency anemia
7.  Anxiety—depression syndrome.
8.  History of peptic ulcer disease.
9.  Status-post appendectomy
10. Status-post belateral tubal ligation.

In a report dated May 15, 1979, Dr. Phil Kennedy stated that he first saw plaintiff on August 17, 1978 and last examined her on April 14, 1979. His final diagnosis was chronic lumbar strain. Although her spinal x-rays were normal, her forward flexion was approximately 60 degrees and painful and lateral flexion was about 45 degrees. Dr. Kennedy stated that plaintiff had severe paraspinal spasms affecting the lumbosacral area. He indicated that she should do no lifting at that time, that very limited amounts of walking and standing were tolerable, and that stooping caused severe pain. Dr. Kennedy concluded that he felt "[plaintiff] is currently disabled from maintaining job of any sort and is currently undergoing intensive therapy to improve this situation."

In a report to the Social Security Administration on June 17, 1979, plaintiff stated that her condition had improved slightly and that she was still going to therapy.

Dr. Lynn Litton examined plaintiff on June 27, 1979. She diagnosed plaintiff's problem as low back strain. Dr. Litton's x-rays showed two areas of calcification over the posterior iliac crest. Flexion and sidebending of the lumbar spine was limited by ten percent. No muscle spasm or motor, sensory or reflex changes were present. Dr. Litton recommended only that plaintiff should avoid any heavy lifting.

In addition to the reports, there was also a letter from Dr. Lester Owens dated October 9, 1979. Dr. Owens was apparently plaintiff's personal physician at one time. He stated that it is his impression that plaintiff will be partially disabled permanently because of her low back condition.

On June 7, 1979, a review physician examined plaintiff's file for the Social Security Administration. Based on Dr. Kennedy's report and the hospital report from plaintiff's February 1979 stay in the hospital, the reviewing doctor concluded that although the reports substantiated the plaintiff's claim of chronic lumbar strain, her x-rays were normal and, other than pain on flexion, plaintiff had no other significant abnormalities as reviewed by objective findings and laboratory information. He found that her impairments were slight.

Although the medical records referred to some other previous medical problems, the only problems plaintiff discussed at the hearing and which appear to be ongoing are her high blood pressure and her back pain. Plaintiff stated at the hearing, however, that her blood pressure was controlled by medication.

*Discussion*

In light of the evidence in the record, it is this Court's duty to determine whether there is substantial evidence to support the Secretary's findings as to the factors used in the grid regulations, *e.g.,* age, education, work experience, and residual functional capacity.

Plaintiff's age at the time of the hearing was forty-years-old, which is clearly a younger individual under the regulations. 20 C.F.R. § 404.1563(b). Accordingly, there

is substantial evidence to support the finding that the age factor is "younger individual."

As for education level, plaintiff testified that she had received her GED and had also had a course on typing, bookkeeping, and filing. Under regulation 404.1564(b), if there is no evidence to contradict it, the numerical grade level is used for calculating educational level. There was no evidence contradicting the presumption that under these facts plaintiff's educational level would be "high school graduate or more." Therefore, there is substantial evidence to support the Secretary's finding that plaintiff's education level was high school or more.[3]

The third vocational factor is previous work experience. The ALJ failed to make a specific finding on this factor, but the rule which he applied was that for "unskilled to none" previous work experience. Under the description of "unskilled" work in the regulations, plaintiff's work as a nurse's aid and nurse technician appears to fall within this category.[4] Unskilled is the lowest level of experience listed, but all experience levels indicate no disability if the other three factors are the same as the ALJ found for plaintiff. The failure to make a specific finding, therefore, caused the plaintiff no prejudice and there is substantial evidence to support this work experience level.

The question, then, ultimately turns on whether there is substantial evidence to support the Secretary's finding, via the ALJ, that plaintiff could perform light work. Although he also found plaintiff could perform medium work, he applied only the grid for light work and the Court will look only to that finding.

Although all the examining doctors recognized that plaintiff had chronic lumbar strain, neither the doctors nor plaintiff indicated plaintiff was limited in her ability to sit for long periods and to operate arm or leg controls by pushing or pulling, part of the work activity described as light. Although one doctor did indicate that plaintiff should do no lifting and that her ability for walking, standing and stooping was limited, the only limitation Dr. Litton indicated was that plaintiff should avoid any heavy lifting. Where there is conflicting evidence, the conflicts should be resolved by the Secretary, not by the Courts. *Janka v. Secretary of Health, Education & Welfare,* 589 F.2d 365, 367 n.3, 369 (8th Cir. 1978); *Celebrezze v. Sutton,* 338 F.2d 417 (8th Cir. 1964); *Laffoon v. Califano,* 558 F.2d 253 (5th Cir. 1977). Although Dr. Kennedy concluded that plaintiff was unable to work, "medical opinions on the ultimate issue of disability are not binding on the Secretary," and the determination of whether a condition the doctor reports is so severe as to be disabling is a question for the Secretary. *Janka v. Secretary of Health, Education & Welfare,* 589 F.2d at 369.

The doctor who reviewed plaintiff's medical records concluded that the claimant's impairments were slight. The opinion of a medical advisor, such as the doctor who reviewed plaintiff's file, can constitute substantial evidence to support a finding of no disability, even if that medical opinion differs from that of an examining physician. *Janka v. Secretary of Health, Education & Welfare,* 589 F.2d at 368; *Gaultney v. Weinberger,* 505 F.2d 943, 945 (5th Cir. 1974).

The ALJ concluded that the expert medical evidence which tended to show that claimant has residual physical strength was more credible than the subjective evidence by plaintiff of her limitations. Clearly, the determination of the credibility of the witness is for the Secretary, via the ALJ in this case, and not for the Courts. *Fitzsimmons v. Mathews,* 647 F.2d 862, 864 (8th Cir. 1981); *Johnson v. Gardner,* 401 F.2d 518, 519 (8th Cir. 1968); *Easttam v. Secretary of*

---

**3.** Even if plaintiff's educational level was the least in the grid, illiterate or unable to communicate in English, and the other factors were the same, the grids indicate that plaintiff would not be considered disabled.

**4.** Basically unskilled work "is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. § 404.1568(a) (1982).

**406**

Health, Education & Welfare, 364 F.2d 509, 513 (8th Cir. 1966); Foss v. Gardner, 363 F.2d 25, 26 (8th Cir. 1966). This is especially important when the question is close because the trier of fact is in the unique position of being able to observe the witnesses and evaluate their testimony and credibility. The credibility of the witnesses in that case can be the deciding factor. See, Easttam v. Secretary of Health, Education & Welfare, 364 F.2d 509, 513 (8th Cir. 1966).

After an independent review of the entire record, the Court finds that the evidence, including the medical reports of Dr. Litton, constitute substantial evidence to support the Secretary's finding that plaintiff could perform light work.

Because the Court has found that there was substantial evidence to support each of the factors used in applying the grid, the determination under the regulation that plaintiff is not disabled is conclusive. Accordingly, after careful consideration of all the evidence and the motions, and on good cause appearing, it is hereby

ORDERED that the issues are found in favor of the defendant, the defendant's motion for summary judgment is hereby granted and the decision of the Secretary is hereby affirmed.