587 F.Supp. 988 (1984)
Homer MASSEY, Plaintiff,
v.
Margaret M. HECKLER, Secretary of Health and Human Services, Defendant.
No. 83-1601C(B).
United States District Court, E.D. Missouri, E.D.
July 5, 1984.
*989 Harry J. Nichols, St. Louis, Mo., for plaintiff.
Wesley Wedemeyer, Asst. U.S. Atty., St. Louis, Mo., for defendant.

MEMORANDUM-OPINION
REGAN, District Judge.
Homer Massey seeks judicial review of a final decision of the Secretary of Health and Human Services terminating previously awarded disability insurance benefits, pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g). Massey filed an application to establish a period of disability and to obtain disability insurance benefits, alleging disability commencing February 11, 1978, due to emphysema, asthma and bronchitis (Tr. 50-53). The claim was initially denied, but was allowed on reconsideration (Tr. 68). On January 8, 1982, the Social Security Administration determined that as of October, 1981, plaintiff's condition no longer prevented him from engaging in substantial gainful activity (Tr. 63-64). A hearing was held and the ALJ rendered a decision unfavorable to the plaintiff on December 28, 1982. The appeals council concluded there was no basis for review of the ALJ's decision and thus the hearing decision stands as the "final decision" of the Secretary. Both parties have filed cross motions for summary judgment.
At the hearing on August 30, 1982, Massey was represented by counsel and testified that he was fifty-seven years old and that he had completed the sixth grade. He testified that he worked as a foreman in spot welding and arc welding. Claimant described his asthmatic attacks stating that his lungs stopped up and that he could not get air through them. He stated that he wheezes and coughs (Tr. 32). He indicated the last time he was hospitalized was in August of 1978 (Tr. 32). He indicated that he had been treated for an ulcer and that he was taking Lanoxin for his heart (Tr. 33). He testified that he lays down often throughout the day (Tr. 34). He testified that bending over makes him short of breath and dizzy headed (Tr. 38). He testified that he could lift twenty-five pounds, but not all day long (Tr. 39). He testified that he has vision problems and he has problems focusing sometimes (Tr. 40). He testified that he has bad spells three or four times a day where he chokes on phlegm and his lungs close up (Tr. 42), and on occasion he coughs up blood (Tr. 43).
At the hearing, Dr. Rickey George, a vocational expert, testified that Mr. Massey's former employment would be considered skilled. The ALJ asked Dr. George if he found that the claimant had to lie down three or four times a day because of asthmatic attacks, would that be compatible with any type of employment, sedentary or otherwise. The vocational expert responded that it would not (Tr. 46). The vocational expert also indicated that the claimant would not be able to work for companies that he had formerly worked for if, due to his pulmonary condition, and that he would require a clean atmosphere. The vocational expert noted that if the claimant could do sedentary work he would be able to find jobs in a clean atmosphere in the electronics industry (Tr. 47).
The medical evidence included a report from Faith Hospital (Tr. 100). In September of 1978, claimant was discharged from Faith Hospital with acute bronchial asthma and respiratory distress syndrome. The prognosis was poor due to the fact that the patient had chronic obstructive lung disease and acute exacerbation of his asthma. It was suggested that the patient move to *990 another climate in order to better control his asthmatic condition (Tr. 100).
Dr. Paletta, in a report dated September 23, 1978, noted that on July 31, 1978, Dr. Dubuque performed a fiberoptic bronchos-copy on the claimant. This demonstrated spirometry minimally obstructed ventilatory defect due to reversible airway disease and suggests a superimposed restrictive process (Tr. 109). He noted that his FEVI before broncho dilator inhaler was 2.37 and after the Alupent Inhaler it was 3.08. Forced air vital capacity before the inhaler was 3.42 and 4.24 after use of the inhaler. This demonstrated that bronchodilation by use of medication was beneficial to the patient. Dr. Paletta noted the patient should stop working because the atmospheric conditions of his employment aggravated his asthmatic and chronic obstructive lung disease (Tr. 110). The doctor noted that the patient was again admitted to the hospital on August 12, 1978, with an acute bronchial asthmatic attack. He was given an oxygen tank to use at home (Tr. 110). The doctor noted that at this point the patient should be considered 100% disabled because of his chronic obstructive lung disease and exacerbation of asthma (Tr. 110).
In a report dated July 12, 1978, Dr. DeLeon diagnosed the claimant as having acute bronchitis with bronchial asthma and found his prognosis to be poor to fair (Tr. 114). A report from Alexian Brothers' Hospital revealed the claimant was hospitalized on April 27, 1978, complaining of shortness of breath. Dr. DeLeon's impression was asthmatic bronchitis, chronic lung disease, pulmonary emphysema and bronchial asthma (Tr. 116).
In a report dated May 11, 1978, Dr. DeLeon noted the claimant's lungs revealed the presence of scattered medium sized expiratory wheezing and rhonchi in both lung fields and scattered harsh breathing sounds. Massey was again placed on bronchodilator drugs, expectorants, and intravenous fluids, antibiotics and Depo Medrol (Tr. 120).
His discharge diagnosis from St. Anthony's Medical Center on March 8, 1978, revealed bronchial asthma, and early pulmonary emphysema (Tr. 123). It was also noted that he had a suspect mass of the left hilum, but there was no evidence of abnormal lesion found (Tr. 129).
In a report dated October 12, 1981, Dr. Peter Kinsella noted that Massey had bronchial asthma, chronic obstructive lung disease and cervical arthritis. The most recent chest x-ray revealed calcification of the aorta and attentuation of the vessels. His prognosis was fair (Tr. 131).
A residual functional capacity report dated October 29, 1981, found the claimant to be able to stand, walk and sit eight hours a day. The report noted Massey was able to lift twenty-five pounds frequently and fifty pounds maximum (Tr. 139). The claimant was found to be restricted as to environmental factors exposing him to temperature, humidity, dust fumes and gases (Tr. 139).
In a letter dated November 10, 1981, Dr. Kinsella noted that the claimant's symptom pattern was episodic with periods of wheezing and dyspnea occurring almost daily. He indicated expiratory wheezes persisted on most office visits associated with decreased transmission of breath sounds (Tr. 142). In a medical report dated February 11, 1982, Dr. Kinsella noted the claimant had a progressive cough, wheezing and dyspnea with mild activity. The doctor noted that various medications had maintained reasonable control of the claimant's condition in the absence of fumes and welding dust from the shop (Tr. 143). Dr. Kinsella also noted mild muscle weakness, crepitation and decreased neck flexion (Tr. 144).
Dr. Frederick W. Klinge examined the claimant on March 10, 1982, and found continued moderate shortness of breath with heavy cough and sputum, chronic bronchial asthma, general weakness and occasional syncope. The doctor noted that the patient had been hospitalized for pulmonary problems periodically since 1978. The doctor also noted syncopal attacks the last one happening approximately two *991 months prior to the examination (Tr. 148). The claimant's FEV1 measured at 80% of the predicted normal and there was no wheezing. The doctor noted MVV was only 51.9 liters above the maximal allowable level of 44.0 liters and 37% of the predicted normal of 141.8 liters. The doctor noted that Massey remained above the maximal allowable levels of FEV1 and MVV without the use of bronchodilators. Dr. Klinge noted that the claimant would appear capable of employment at a light physical level not exposing him to industrial dust, gases, heights or machinery (Tr. 152). His final diagnosis was mild depression of pulmonary functions, generalized weakness secondary to the sedentary state of this individual, syncope, cause undetermined and a small umbilical hernia (Tr. 152).
In another residual functional capacity report dated March 17, 1982, the medical consultant determined that the claimant should be able to stand and walk six hours a day, and that he would be able to sit for eight hours (Tr. 161).
In a letter dated June 15, 1982, Dr. Kinsella noted that claimant had maintained some level of improvement because he had not been required to work on a daily basis. He further noted that even under those circumstances bouts of acute illness have occurred. Dr. Kinsella noted that Mr. Massey was permanently disabled. He felt that pulmonary function studies taken at symptom free periods might indicate a lesser degree of disability than is truly present (Tr. 163).
In his hearing decision of December 28, 1982, the ALJ determined that the claimant suffered from chronic obstructive lung disease and asthma, but that his alleged inability to do any substantial gainful activity was not supported by or consistent with the medical evidence of record (Tr. 14). The ALJ determined that the claimant regained the functional capacity to perform sedentary work in October of 1981 (Tr. 14).
Judicial review of the Secretary's decision is limited. The decision must be upheld if there is substantial evidence on the whole to support it. Richardson v. Perales, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); Timmerman v. Weinberger, 510 F.2d 439 (8th Cir.1975). The findings of fact of the ALJ are conclusive if supported by substantial evidence on the record as a whole. Nettles v. Schweiker, 714 F.2d 833 (8th Cir.1983). Review under this standard is more than a rubber stamp for the Secretary's decision or a search for the existence of evidence supporting the findings. McMillian v. Schweiker, 697 F.2d 215 (8th Cir.1983).
The Court has carefully considered the evidence in the claimant's case and concludes that the record supports the decision of the Secretary. The ALJ's assessments of credibility and claimant's ability to perform sedentary work are well within his province. Janka v. Secretary of HEW, 589 F.2d 365 (8th Cir.1978). The Secretary has successfully assumed the burden that had been shifted to her by Massey's claims of inability to return to his prior employment. Jackson v. Schweiker, 696 F.2d 630 (8th Cir.1983). The evidence submitted by Dr. Klinge suggested that the claimant remained above the maximal allowable levels of FEV1 and MVV without any use of bronchodilators. Dr. Kinsella admits improvement in his patient, but maintains that the test taken at symptom free periods indicated a lesser degree of disability than is truly present. Nevertheless, the evidence supports the finding that the claimant has improved since he no longer is in an atmosphere exposed to dust, fumes and gases. Conflicts in the evidence between Dr. Klinge and Dr. Kinsella are to be determined by the Secretary. Janka, supra.
The Court is not unsympathetic to the claimant's complaints of pulmonary disease, but determines that there is substantial evidence supporting the administrative determination that the claimant regained the ability to engage in substantial gainful activity. In addition, the claimant is approaching the age whereby he will automatically receive benefits.
*992 Accordingly, it is the finding of the District Court that the Secretary's motion for summary judgment be SUSTAINED and that the motion for summary judgment filed by the claimant be DENIED.