Frederick E. BROWN, Plaintiff,

v.

Otis R. BOWEN, Secretary of the Department of Health and Human Services, Defendant.

No. 87–0382–CV–W–5.

United States District Court,
W.D. Missouri, W.D.

Oct. 30, 1987.

A.J. Falcone, North Kansas City, Mo., for plaintiff.

Robert B. Schneider, Asst. U.S. Atty., Paul P. Cacioppo, Chief Counsel, Region VII, Dept. of Health & Human Services, Kansas City, Mo., for defendant.

## ORDER

SCOTT O. WRIGHT, District Judge.

This is a review of a denial of disability and Supplemental Security Income (SSI) benefits under Titles II and XVI of the Social Security Act (SSA), 42 U.S.C. § 401, *et seq.* Section 405(g) of the Act provides for judicial review of a "final decision" of the Secretary of Health and Human Services. Pending before the Court now are cross-motions for summary judgment. For the following reasons, plaintiff's motion for summary judgment will be overruled, and the defendant's motion will be sustained.

### I. Procedural History

Plaintiff Frederick E. Brown filed his application for disability and supplemental security income benefits under Titles II and XVI of the SSA on September 25, 1985, only 3½ weeks after his alleged onset of disability. His claim was denied initially and upon reconsideration. After a hearing

on August 20, 1986, Administrative Law Judge (ALJ) Keith L. Stanley denied plaintiff's claim on November 25, 1986. The ALJ determined that the plaintiff was unable to perform his past relevant work but that he retained the residual functional capacity to perform a significant number of sedentary jobs. The Appeals Council denied plaintiff's request for review on March 24, 1987. The ALJ's decision, therefore, stands as the final decision of the Secretary for review before this Court.

## II. Factual Background

### A. Employment History

Frederick E. Brown is a 39–year–old male (age 38 at the time of the hearing) with a high-school education plus 95 credit hours in military fire science training. He last worked as a self-employed handyman in August, 1985. Previously, he had worked as an assembler in a shoe factory, heavy equipment operator, truck driver, construction laborer and nurse's aide.

### B. Medical Evidence

The plaintiff alleges that he has been disabled since August 31, 1985, when he was beaten with a baseball bat, suffering a closed head injury, facial fractures, lacerations, and soft-tissue trauma to the neck and upper thoracic area.

The relevant medical evidence begins with the records from the Veterans Administration (VA) Hospital in Columbia, Missouri, where the plaintiff underwent repair of the nasal fracture in September, 1985, following the beating. The records also document complaints of "persistent neck and upper extremity pain and weakness, particularly in his hand grip on the left."

A cervical myelogram performed in early October, 1985, revealed an "anterior extradural defect at the C3–4 level," which was interpreted as either a hematoma or possible herniated disc. Plaintiff was managed conservatively at that time with medication, cervical collar, local heat and bedrest, with activity to be increased as tolerated.

On October 21, 1985, plaintiff was examined by Jack R. Uhrig, M.D., at the request of the SSA. Noting Mr. Brown's history of trauma to the head and neck, Dr. Uhrig also reported that plaintiff complained of "black out spells" lasting 3 to 5 seconds of "electricity type pain shooting through the neck and down the arms, particularly when he turns his neck in any direction." Neurological exam revealed "3+ 5+" weakness of the left upper extremity and grip, "4+/5+" weakness in the left lower extremity. There was some decreased sensory function in the left upper and lower extremities as well as uncontrollable recurrent jerking movements of the left lower extremity. Sensory function was also slightly diminished in the right hand and foot. Dr. Uhrig described plaintiff's mental status as "completely normal," with good memory, intelligence and no "significant psychiatric involvement." A history of hypertension and chronic alcohol and tobacco use is also related.

When Mr. Brown's symptoms persisted, he again entered the VA Hospital on January 23, 1986, and underwent an anterior cervical discectomy at the C3–4 level. The discharge note by W. Levy, M.D., dated February 13, 1986, reports that the entire hospital course was uncomplicated and that the lower-extremity spasticity had "considerably diminished" since surgery. At this time, Dr. Levy stated that the plaintiff was "temporarily disabled," and described the following activity limitations:

> [Mr. Brown] was instructed to refrain from heavy lifting or strenuous activities, and then will be re-evaluated in our clinic for further liberalization of his activities. [Follow-up was to be scheduled one month later.]

No follow-up reports from the VA clinic, however, are included in plaintiff's record.

The next available medical records relate to the VA hospital admission for a septoplasty (nasal surgery) in July, 1986. The only activity limits placed on Mr. Brown at discharge were that he refrain from sneezing or heavy lifting for two weeks.

In September, 1986, plaintiff entered the VA Hospital for "depression." On admission, there was some motor strength and decreased coordination, more on the left

than right, with "intermittent jerking movements of the left upper extremity." C. Balcur, M.D. determined that there was "no organic cause" for plaintiff's spasms and he was diagnosed with an "adjustment disorder," rather than depression, to be treated on an outpatient basis with supportive psychotherapy. No limits were plac ᴵ on prehospital activities.

Finally, Jimmy L. Yowell, D.O., was the attending physician for Mr. Brown during his two-day stay at Carroll County Memorial Hospital in January, 1987. Although plaintiff's chief complaints on admission were headaches and confusion, Dr. Yowell's diagnoses were acute hypertension, acute alcoholism, and acute anxiety with psychosomatic overlay.

Plaintiff's sister and mother provided the ALJ with affidavits stating that the plaintiff is now sometimes disoriented and combative, with decreased ability to use his arms and legs, difficulty sleeping, and frequent alcohol use.

### III. Standard of Review

The scope of judicial review of the Secretary's decision is statutorily defined. 42 U.S.C. § 405(g), provides that the Secretary's decision is conclusive if it is supported by substantial evidence. *Alexander v. Weinberger*, 536 F.2d 779 (8th Cir.1976). This standard of substantial evidence is defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971); *McMillian v. Schweiker*, 697 F.2d 215, 221 (8th Cir.1983). This standard of review, however, is "more than a mere rubberstamp of the Secretary's decision." *Id.* at 220.

The claimant has the initial burden of establishing the existence of a disability as defined by 42 U.S.C. § 423(d)(1). Further, he must prove that the disability existed prior to the expiration of his insured status. In order to meet the statutory definition, the claimant must show (1) that he has a medically determinable physical or mental impairment that will either last for at least 12 months or result in death; (2) that he is unable to engage in any substantial gainful

activity; and (3) that this inability is a result of his impairment. *McMillian*, 697 F.2d at 220.

If the claimant establishes that his impairment is so severe that he cannot return to his former occupation, the burden shifts to the Secretary to prove that the claimant can perform some other kind of substantial gainful activity. *O'Leary v. Schweiker*, 710 F.2d 1334, 1337 (8th Cir.1983); *McDonald v. Schweiker*, 698 F.2d 361, 364 (8th Cir.1983). To meet this burden, the Secretary need not find a specific job opening for the claimant, but must prove that substantial gainful activity is realistically within the mental and physical capabilities of the claimant. *McMillian v. Schweiker*, 697 F.2d at 221.

When reviewing the record to determine if there is substantial evidence to support a finding that the plaintiff is realistically capable of engaging in substantial gainful employment, the Court is to consider the following factors: the educational background, work history, and present age of the plaintiff; subjective complaints of pain and the plaintiff's description of physical activities and impairments; the medical opinion given by treating and examining physicians; the corroboration by third parties of claimant's physical impairments; and the testimony of vocational experts when based upon proper hypothetical questions that fairly set forth the plaintiff's physical impairments. *McMillian*, 697 F.2d at 221.

### IV. Analysis

■ Having applied the above standard of review, the Court has determined that there is substantial evidence to support the Secretary's finding that the plaintiff has the residual functional capacity for a limited range of sedentary work.

Upon finding that the plaintiff could not perform his past relevant work, the ALJ recognized that the burden of proof shifted to the Secretary to show that the plaintiff is capable of substantial gainful employment. The vocational expert, Terri C. Schmitz, testified that the plaintiff would be unemployable if *all* of Mr. Brown's tes-

timony and written allegations were accepted as true. Ms. Schmitz explained that the muscle spasms, loss of grip strength and concentration problems (due to alleged vomiting and blackouts) would impede performance.

The ALJ, however, determined that Mr. Brown's descriptions of his exertional and nonexertional symptoms were not fully credible, stating that the evidence did not support limitations due to mental or emotional conditions. Although the ALJ noted that no medically determinable cause for infrequent blackouts was diagnosed, he did conclude that these would restrict Mr. Brown's capacity to perform work around hazardous machinery or unprotected heights.

In response to another hypothetical, the vocational expert also stated that the plaintiff would not be employable if he could not bend or stoop *at all.* Here again, however, the ALJ determined that plaintiff was not so restricted and stated:

"There is no doubt that the claimant has some restrictions in the use of his extremities and his neck as a result of a possible herniated disc which required an anterior cervical discectomy in February 1986. However, the claimant's treating physicians, whose opinions are entitled to great weight, reported in July 1986 that the claimant should avoid heavy lifting for only 2 weeks, and in September 1986 concluded that he should return to activities as soon as possible with no limitations."

The ALJ further noted that he had considered the plaintiff's testimony in light of the medical evidence, including the physicians' reports, the fact that no medications had been prescribed, and plaintiff's sporadic work history since 1980 to conclude that Mr. Brown's testimony was not fully credible.

Finally, the ALJ accepted as credible the following restrictions:

"[T]he claimant is at most restricted exertionally from performing activities requiring full movement of his neck, from lifting and carrying more than 10 pounds occasionally and 20 pounds frequently, from performing more than occasional bending or balancing, and from working in hazardous areas or walking on uneven terrain."

In another hypothetical, ALJ Stanley asked the vocational expert to consider a 38–year–old male with a twelfth-grade education plus 95 hours of college credit and the following restrictions:

"[He] cannot work in hazardous areas or perform hazardous tasks, is limited to occasional bending, balancing and climbing, cannot walk on an uneven terrain, cannot lift over 20 pounds maximum and 10 pounds frequently, cannot push and pull over 20 pounds maximum, cannot perform work requiring full neck movement and frequent neck movement."

In response, the VE stated that plaintiff could not perform his past work but could perform sedentary, semi-skilled and unskilled jobs such as an order clerk, receptionist, or telemarketing worker.

■ The Court finds that this hypothetical was sufficient. Hypotheticals are sufficient if they set forth the impairments which are accepted as true by the ALJ. *Roberts v. Heckler,* 783 F.2d 110, 112 (8th Cir.1985).

The Eighth Circuit has held that the determination of credibility of subjective testimony is for the Secretary, via the ALJ here, and not for the Courts. *Benskin v. Bowen,* 830 F.2d 878, 882 (8th Cir.1987); *Janka v. Secretary of Health, Education & Welfare,* 589 F.2d 365, 367 n. 3 (8th Cir.1978). Conflicts of evidence are to be resolved by the Act. *Janka,* 589 F.2d at 367 n. 3.

■ Although plaintiff denied that he has a drinking problem at the hearing, his attorney argues that the ALJ did not develop the record on the alcoholism issue. The Court, however, notes that Dr. Yowell and Dr. Uhrig both reported plaintiff's chronic alcohol use. Still, in order to establish a disability based on alcoholism, the claimant must show "that he has lost self-control to the point of being 'impotent to seek and use means of rehabilitation'." *Metcalf v. Heckler,* 800 F.2d 793, 796 (8th Cir.1986).

There is no indication of this on the record, and plaintiff's own testimony would contradict such a finding.

The Court recognizes that the substantial evidence standard allows considerable latitude to administrative decisionmakers. Such decisions are not to be reversed merely because substantial evidence could have supported an opposite decision. *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir.1984). Accordingly, it is hereby

ORDERED that the plaintiff's motion for summary judgment is denied. It is further

ORDERED that the defendant's motion for summary judgment is granted. The decision of the Secretary is affirmed.