**James E. McMILLIAN, Appellant,**

v.

**Richard S. SCHWEIKER, Secretary of Health and Human Services, Appellee.**

**No. 82–1247.**

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 14, 1982.

Decided Jan. 5, 1983.

John W. Reid, II, Robin E. Fulton, Schnapp, Graham & Reid, Fredericktown, Mo., for appellant.

Before McMILLIAN, Circuit Judge, FLOYD R. GIBSON, Senior Circuit Judge, and JOHN R. GIBSON, Circuit Judge.

FLOYD R. GIBSON, Senior Circuit Judge.

James E. McMillian seeks review of the district court's order affirming the final decision of the Secretary of Health and Human Services denying McMillian's claim for a period of disability and disability insurance benefits under Sections 216(i) and 223 of the Social Security Act, 42 U.S.C. §§ 416(i) and 423 (1976). The Administrative Law Judge (ALJ) denied McMillian's claim and the Secretary affirmed this ruling. McMillian thereafter sought review before the district court. The district court, on review of a magistrate's recommendation that substantial evidence supported the administrative decision, entered summary judgment in favor of the Secretary. We reverse the judgment of the district court.

## I.

The administrative record reveals that McMillian is fifty years old and has an eighth grade education. He worked for eighteen years as a machine operator in a shoe factory until March 5, 1980, when he suffered a stroke. He had previous employment as a farm worker and a potato chip routeman. He also served four years in the Air Force as a supply specialist.

In December, 1975, McMillian had brain tumor surgery. After he returned to his job in the shoe factory in February 1976, he noticed that he could not move his arms and legs as fast as before the brain tumor surgery. While working on March 5, 1980, he began dropping shoes as his fingers moved uncontrollably. McMillian was sent to a physician in whose office he suffered a stroke. He was immediately taken to a hospital where he remained for six weeks and underwent neurosurgery for the removal of a blood clot from his brain.

Thomas E. Dittmeier, U.S. Atty., Joseph B. Moore, Asst. U.S. Atty., St. Louis, Mo., for appellee; Paul P. Cacioppo, Regional Atty., Region VII, Dept. of Health and Human Services, D. Samuel Borin, Kansas City, Mo., of counsel.

McMillian filed an application for social security disability benefits on April 25, 1980, claiming that he became disabled on March 5, 1980, due to his stroke and brain surgery. His application was initially disallowed and was denied again upon reconsideration by the Social Security Administration. Pursuant to McMillian's request, an evidentiary hearing was held before an ALJ on January 16, 1981. The ALJ heard the testimony of McMillian, McMillian's four witnesses, and a vocational expert, and received in evidence medical reports from five doctors who examined McMillian.

McMillian testified that since his stroke in 1980 he has been unable to perform many tasks that he formerly was able to perform, such as driving a car, fishing, and gardening. He has difficulty walking because his left leg feels heavy, and has difficulty using his left hand. McMillian's daily activities are now confined to reading, resting, doing some light physical therapy including lifting eight-pound weights, and doing some light housework including washing dishes. McMillian testified, however, that he fatigues and requires rest after any physical exertion, including taking a bath. McMillian also testified that he has experienced difficulty in concentrating and suffers from recurring headaches and hypertension.

The medical evidence includes the reports from five examining physicians. Dr. John Kendig, M.D., a neurosurgeon, operated on McMillian on March 19, 1980 to remove the intracordical blood clot that caused McMillian's stroke. The blood clot was located in the right parietal cortex, in the area of McMillian's tumor surgery in 1975. Dr. Kendig examined McMillian three times after the operation on March 19, 1980, and submitted three medical reports. In the first report, dated May 28, 1980, Dr. Kendig noted that McMillian had limited movement in his left hand and suffered from recurring headaches and nervousness. On August 27, 1980, Dr. Kendig reported that McMillian was making progress, that he could grip with the left hand and could walk slowly, but that he had some restriction of the left homonymous field and experienced hyperflexia. On January 8, 1981, Dr. Kendig

examined McMillian and issued a report in which he stated under oath that as of March 5, 1980, McMillian became totally and permanently disabled under the Social Security Act.

Dr. Beyer, D.O., who examined and treated McMillian a number of times since his stroke, issued a medical report on December 1, 1980, in which he stated under oath that as of March 5, 1980, McMillian became totally and permanently disabled under the Social Security Act. Dr. Beyer observed that McMillian had residual weakness in his left extremities with profound weakness and incoordination in his left hand.

Dr. Robert A. Yanover, a neurologist, examined McMillian on June 11, 1980 and reported that he had very limited use of and weakness in his left hand as well as some loss in the use of his left leg, although gross walking and motor movements were not severely impaired. Dr. Yanover also observed that there were no visible abnormalities of speech or mental functioning, but concluded that the prognosis of McMillian was guarded.

On June 26, 1980, Dr. Bentinganin, M.D., examined McMillian on behalf of the Missouri Division of Family Services and certified that McMillian "has a mental and/or physical disability which prevents him from engaging in full time employment on a regular basis at the normal wage rate for that employment for which his age, training, experience or education will fit him." Dr. Bentinganin noted that McMillian's left arm reflexes were sluggish and his left hand movement was slow.

On February 4, 1981, Dr. P.A. George, M.D., an internist, examined McMillian upon the request of the ALJ. Dr. George found that McMillian experienced residual weakness of the left upper extremity (particularly for fine coordinated movements) and the left leg. Dr. George did not administer a treadmill exercise test, concluding that McMillian could not tolerate the test due to his difficulty in walking. He further concluded that during an eight-hour workday, McMillian could sit no more than two

or three hours at a time, and no more than a total of three or four hours for an entire eight-hour working day; also, McMillian could stand for less than an hour at a time and could walk for an hour at a time.* Dr. George noted that McMillian's mental, verbal, and visual functions appeared normal, but that he had a history of meningioma and mild hypertension.

Thus the medical evidence clearly corroborates McMillian's complaints of residual weakness in his left hand and leg, limited use of his left hand, and difficulty in walking. Furthermore, the physician who examined McMillian most recently concluded that McMillian could not tolerate a treadmill exercise test, could not sit more than two or three hours at a time and no more than four hours in a day. Also, the two physicians having the most contact with McMillian, Drs. Kendig and Beyer, concluded that McMillian was totally and permanently disabled, while another physician, Dr. Bentinganin, certified that McMillian was prevented from engaging in full time employment due to his physical and/or mental impairments. And, while two physicians, Drs. Yanover and George, noted that McMillian's mental and visual functions appeared normal, nothing in the medical evidence specifically contradicts McMillian's complaints of fatigue and difficulty in concentrating.

The ALJ also heard the testimony of McMillian's four witnesses. Mrs. McMillian, the claimant's wife, testified that after the stroke McMillian had been unable to continue such routine activities as fishing and driving a car, that he had very limited use of his left hand and had difficulty walking. George Huffman, the superintendent at the shoe factory where McMillian was employed, testified that although McMillian had been a very good employee in the past, there were no jobs at the factory that McMillian was capable of performing in his present condition. Lawrence White, McMil-

lian's long-time friend and fellow employee at the shoe factory, testified that McMillian's mobility had deteriorated considerably since his stroke, preventing him from returning to his former job at the shoe factory. Flora Scott, another long-time friend, testified that McMillian had trouble using his left leg and left hand.

Finally, the ALJ heard and principally relied upon the testimony of vocational expert Arthur Smith, Ph.D. Dr. Smith was first asked to consider an hypothetical setting out McMillian's age, education, medical history, his weakness in his left hand and left leg, his difficulty in walking, his recurring headaches, and his need for rest after any physical exertion. Based on this hypothetical, Dr. Smith concluded that McMillian could neither return to his former job nor engage in any other substantial gainful employment. The ALJ then asked Dr. Smith to assume that while sitting down McMillian did not need to rest after engaging in physical exertion. Dr. Smith responded that:

[T]here are a number of sedentary jobs which are performed by individuals with a single upper limb. Occupations which utilize kinds of skills that have been involved in—in his occupations. Those jobs calling for visual examination such as inspecting, checking, testing, examining, grading kinds of jobs which are found in a host of industries throughout this state.

There are a number of machine tending jobs, again jobs which are sedentary, which do not involve lifting, which do not involve both hands, which essentially call for starting and stopping and observing the machine operation (sic) use of one hand to push a button, that type of thing. Metal fabricating kinds of machines. Relating to the potato chip job would be such sedentary jobs as contribution solicitor or telephone survey worker so long as there's (sic) ability to—to write with the

---

* These findings contrasted with two earlier *non-examination* residual functional capacity evaluations conducted on June 18, 1980 and October 14, 1980, which indicated that McMillian was believed to be able to stand and walk six hours during an eight-hour workday and to sit for eight hours. The two residual functional capacity evaluations were neither relied upon nor referred to in the ALJ's decision.

good hand, those kinds of jobs which are found with—within the state and—and primarily in metro areas.

So those would be the—illustrative of the kinds of jobs given no restrictions other than what was cited here.

On cross-examination by McMillian's counsel, Dr. Smith admitted that if McMillian had difficulty concentrating, as McMillian testified, then that could present a problem in finding any sedentary job.

In his written opinion denying McMillian's claim, the ALJ concluded:

The claimant currently suffers from non-exertional impairments of the residuals of the surgery and the stroke with limited use of his left upper extremity and some limitation in his left lower extremity. The claimant is a right hand dominant individual. Doctor Kendig the claimant's treating physician reported the claimant does have grip of his left hand. The evidence in totality shows that there is a limitation to fine finger dexterity of the left hand but not gross manipulation. The claimant's impairments from his stroke would not preclude the performance of sedentary job activity as enumerated by the vocational expert.

Concerning McMillian's complaints of fatigue and difficulty in concentration, the ALJ observed:

[T]he medical evidence consistently reports that there is good mental functioning. There has been absolutely no evidence demonstrated that indeed there is any significant impairment as to concentration. The claimant has either failed to mention this to the doctors or if he did the doctor's (sic) failed to consider it significant enough to mention in their reports. It is also noted that claimant alleges that he has such difficulty with fatigue that he become (sic) fatigued after merely taking a bath. However, his wife's testimony indicated that he is able to walk one mile in good weather. It is also to be noted that nowhere in the medical evidence of record is there any complaint of significant fatigue. The Administrative Law Judge must consider subjective complaints with due regard to motivation, credibility and medical evidence of impairment. In considering these factors the Administrative Law Judge does not find that his fatigue would indeed preclude sedentary job activity.

The ALJ's decision was adopted as the final decision of the Secretary and was affirmed by the district court.

## II.

■ On appellate review of a decision regarding disability benefits, our duty is to determine whether the decision is supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *Also see, Brand v. Secretary of HEW,* 623 F.2d 523, 527 (8th Cir.1980). Substantial evidence, in turn, means more than a scintilla of evidence; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Furthermore, this standard of review is more than a rubber stamp for the Secretary's decision, and is more than a mere search for the existence of substantial evidence supporting the Secretary's decision. *Brand,* 623 F.2d at 527. As Justice Frankfurter made clear "the substantiality of evidence must take into account whatever the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 488, 71 S.Ct. 456, 464, 95 L.Ed. 456 (1951).

■ In order to meet the statutory definition of disability under 42 U.S.C. § 423(d)(1)(A), the claimant must show (1) that he has a medically determinable physical or mental impairment which will either last for at least twelve months or result in death, (2) that he is unable to engage in any substantial gainful activity, and (3) that this inability is a result of his impairment. *Timmerman v. Weinberger,* 510 F.2d 439, 442 (8th Cir.1975). However, where as in this case a claimant has clearly demonstrated a medically determinable impairment that is so severe as to prevent him from

performing his former work, the burden shifts and the Secretary must prove there is some other type of substantial gainful employment that the claimant can perform. *Id.* at 443. To meet this burden the Secretary need not find a specific job opening for claimant, but must prove that substantial gainful employment is "*realistically* within the physical and mental capabilities of the claimant." *Id.* at 442. (Emphasis added). And, when reviewing the record to determine if there is substantial evidence supporting a finding that the claimant is realistically capable of engaging in substantial gainful employment, this court is guided by the following factors: the educational background, work history, and present age of claimant; the subjective complaints of pain and claimant's description of physical activities and impairments; the medical opinion given by treating and examining physicians; the corroboration by third parties of claimant's physical impairments; the testimony of vocational experts when based upon proper hypothetical questions that fairly set forth the claimant's physical impairments. *Brand,* 623 F.2d at 527.

 Applying the foregoing legal principles to the administrative record before us, we conclude that the Secretary has failed to establish by a preponderance of the evidence that there was work available in the national economy that McMillian could realistically perform in his present condition. The evidence purportedly supporting the Secretary's decision included the medical reports of five examining physicians and the vocational expert's responses to hypothetical questions posed by the ALJ. However, neither of these evidentiary sources supports the Secretary's decision.

First, the medical reports reveal that three examining physicians, including two physicians who had examined McMillian numerous times, concluded that McMillian could not engage in substantial gainful employment due to his stroke and brain surgery, while the two other examining physicians refrained from expressing an opinion on the matter. Furthermore, Dr. George, the most recent examining physician, spe-

cifically found that McMillian's disability rendered him unable to tolerate a treadmill exercise test and incapable of sitting down for more than two or three hours at a time and four hours in an entire eight-hour working day. While the medical reports do indicate that McMillian can walk independently, this circuit has recognized that "the mere fact that [the claimant] . . . is mobile does not establish that he can engage in substantial gainful activity." *Yawitz v. Weinberger,* 498 F.2d 956, 960 (8th Cir. 1974). Finally, nothing in the medical reports specifically contradicts McMillian's complaints of difficulty in concentration and fatigue. The cursory observation made by two examining physicians that McMillian's mental and verbal functions "were not visibly abnormal" does not detract from McMillian's complaint of difficulty in concentration. Also, McMillian's complaint of fatigue was at least partially corroborated by the specific findings of Dr. George.

Second, the vocational expert's responses to the hypothetical questions posed by the ALJ do not support a finding that McMillian can realistically perform substantial gainful employment in his present condition. A vocational expert's response to an hypothetical constitutes substantial evidence only where the hypothetical question precisely sets forth all of the claimant's physical and mental impairments. *See Behnen v. Califano,* 588 F.2d 252, 255 (8th Cir. 1978); *Daniels v. Mathews,* 567 F.2d 845, 848 (8th Cir.1977). In this case, when Dr. Smith was asked to consider all of McMillian's physical and mental impairments—including McMillian's need to rest after every physical exertion and his difficulty in concentration—he testified that McMillian could not perform any substantial gainful employment, not even sedentary work. However, the ALJ discredited McMillian's complaints of fatigue and difficulty in concentration and asked Dr. Smith an hypothetical question that failed to account for these complaints. In response, Dr. Smith testified that people with one arm having McMillian's work experience could perform such sedentary jobs as inspecting, checking and grading products, and telephone solicit-

ing. We believe that this testimony was fatally deficient because the hypothetical question failed to precisely set out McMillian's impairments of fatigue and difficulty in concentration. *See Stephens v. Secretary of HEW,* 603 F.2d 36, 41 (8th Cir.1979). While it is for the trier of fact to resolve conflicts of evidence, here there was no conflict in the evidence regarding McMillian's problems of fatigue and difficulty in concentration. As mentioned above, McMillian's testimony regarding these problems was not contradicted by any of the medical evidence. Furthermore, Mrs. McMillian's testimony that McMillian occasionally walked a mile does not discredit McMillian's complaint that he required rest after any physical exertion. Certainly, an ability to walk a mile does not also imply an ability to walk a mile uninterrupted by frequent rest stops. Hence, the finding that McMillian could perform sedentary work, being based on Dr. Smith's response to the ALJ's improper hypothetical question, was not supported by substantial evidence.

We therefore reverse the judgment of the district court and remand the case with directions to grant summary judgment for McMillian.