**Dale D. LUTHI, Plaintiff,**

v.

**Otis R. BOWEN, M.D., Secretary of the Department of Health and Human Services, Defendant.**

**No. 85–6173–CV–SJ–8.**

United States District Court,
W.D. Missouri,
St. Joseph Division.

Nov. 4, 1986.

Lyle L. Odo, North Kansas City, Mo., for plaintiff.

Judith M. Strong, Kansas City, Mo., for defendant.

ORDER

STEVENS, District Judge.

Before the court is Dale Luthi's petition for judicial review of the Secretary's final decision denying him disability benefits under Title II of the Social Security Act. Having carefully considered the record and the memoranda supplied by the parties in support of their respective motions for summary judgment, this court affirms the Secretary's final decision.

In April 1982, plaintiff was employed as a grounds keeper at Park College in Parkville, Missouri. On April 29, 1982, plaintiff sustained injury to his lower back when a co-worker, apparently intending to play a practical joke, jumped on his back while he was bent over weeding dandelions. Plaintiff was fifty-eight at the time of this injury. After a period of conservative treatment, plaintiff underwent surgery on October 22, 1982. After a period of recuperation, plaintiff in July 1983 resumed part-time work repairing and servicing audio and video equipment at Park College while also taking electronics classes at an area vocational school. Plaintiff assumed full-time duties in the repair department in May 1984, and continued to work there on a full-time basis until Park College terminated his employment on September 14, 1984.

On September 19, 1984, plaintiff filed for disability benefits. After his application was denied upon both initial consideration and reconsideration, plaintiff requested a hearing before an administrative law judge (ALJ), which was held May 16, 1985. Plaintiff was represented by counsel; plaintiff, his wife, a neighbor, and a vocational expert testified at the hearing, and numerous exhibits were admitted into the record. On June 25, 1985, the ALJ rendered an opinion unfavorable to plaintiff. On September 17, 1985, the Appeals Council of the Social Security Administration denied plaintiff's request for review, the decision of the ALJ thus becoming the Secretary's final decision. Plaintiff then timely sought this court's review pursuant to 42 U.S.C. § 405(g).

Title II of the Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment ... which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Once a claimant demonstrates a medically determinable impairment that prevents him from returning to his former work, the burden shifts to the Secretary to show that there is some other type of substantial gainful employment that the claimant can perform. *McMillian v. Schweiker*, 697 F.2d 215, 220–21 (8th Cir.1983) (citation omitted). There is little doubt in the present case that Mr. Luthi cannot return to his former employment either as a grounds keeper or as an electronics repairman. As the court views it, the determinative question on review is whether there is substantial evidence in the record to support the ALJ's finding that plaintiff is capable of some other type of substantial gainful employment.

In making the determination that plaintiff is capable of substantial gainful employment, the ALJ rejected plaintiff's claim that he is totally disabled. There is substantial evidence in the administrative record to support this finding. First, the ALJ had before him the expert medical opinion of Dr. Roger Jackson, plaintiff's orthopedic surgeon. On June 15, 1983, Dr. Jackson reported that, even taking into account plaintiff's complaints of post-surgical back pain and taking into account his restricted range of motion, plaintiff was at most thirty percent permanently impaired. Dr. Jackson further indicated that though plaintiff should minimize his bending and lifting, still he could do light lifting on

occasion. Record at 201–202. In short, Dr. Jackson, a treating specialist, was not of the opinion that plaintiff is completely disabled, and his findings were based upon both physical examination and a CT scan of the lumbar spine. Second, the ALJ had before him the medical opinion of Dr. Harry Overesch, an orthopedic surgeon who examined plaintiff on October 26, 1984 on a consultative basis. Dr. Overesch was of the opinion that plaintiff was not totally disabled. He recommended, however, that plaintiff be confined to sedentary work. Dr. Overesch's conclusion was based on physical examination and on x-ray studies performed in his office. Notably, Dr. Overesch concluded that plaintiff was capable of sedentary work even though plaintiff had made numerous complaints of pain and other discomforts known to Dr. Overesch during the course of the examination and, further, even though his x-ray studies suggested the possibility that plaintiff's back had not completely healed. Record at 211–13. Finally, the record contains two residual functional capacity assessments, the first conducted by Dr. Quentin Cramer on October 30, 1984 and the second by Dr. David Forester on December 5, 1984. Neither physician was of the opinion that plaintiff was totally disabled. Record at 230–31; 234–35.[1]

The only medical evidence in the record suggesting that plaintiff is incapable of undertaking any substantial gainful employment at all, not even that of a sedentary nature, is the opinion of plaintiff's family physician, Dr. T.M. Haley. In a letter dated August 31, 1984, Dr. Haley opined that plaintiff's back had deteriorated to such a degree that "it's impossible for him to do any prolonged standing, sitting, stooping, or lifting." Dr. Haley stated that he considered plaintiff permanently disabled. Record at 205. The record also contains a medical report dated September 28, 1984 in which Dr. Haley states that plaintiff's back was worsening each day and that plaintiff's prognosis appeared poor. Record at 207.

■ Given the medical evidence in this case, it was not error for the ALJ to conclude that plaintiff is not totally disabled. In the opinion of four physicians, including two orthopedic surgeons—one of them a treating physician—plaintiff is capable of at least sedentary work. Only Dr. Haley, a general practitioner, was of the view that, at least as of the fall of 1984, plaintiff was completely disabled. Further, Dr. Haley's opinion is buttressed by a relatively sparse set of clinical or diagnostic findings when compared with the findings supplied by Dr. Overesch, a specialist who examined plaintiff within a few weeks of Dr. Haley's own examination which served as the basis for the latter's September 28, 1984 opinion that plaintiff is totally disabled. It is the duty of the ALJ to resolve conflicts in the medical evidence, *Weber v. Harris,* 640 F.2d 176, 178 (8th Cir.1981), and based on the foregoing review the court believes the ALJ's finding is supported by substantial evidence.[2]

As a further ground for reversal, plaintiff maintains that the ALJ erred in finding that he could be expected to make the vocational adjustment to sedentary work based on skills he had acquired in past relevant work. The ALJ's finding in this regard was based upon the testimony of Michael Horan, a vocational expert. In response to a hypothetical question, Mr. Horan testified that plaintiff could work as an electronics assembler, an electronics technologist, an inventory clerk, or a cashier, sedentary jobs all of which exist in significant numbers in the local economy. Record at 108. Plaintiff argues that the ALJ erred in relying upon a hypothetical

1. It does not appear that the ALJ relied on these assessments in making his decision.

2. The ALJ also properly evaluated plaintiff's subjective complaints of pain. Plaintiff testified that the pain in his lower back was so severe that it required him to lie down at least seventy percent of the day. No medical opinion, not even Dr. Haley's, supports such a claim; further, plaintiff's own daily log of his activities fails to bear it out. These complaints were properly discounted by the ALJ under the standards set forth in *Polaski v. Heckler,* 739 F.2d 1320 (8th Cir.1984).

that failed to include plaintiff's complaints of frequent episodes of profuse sweating of the upper body and uncontrollable shaking of the hands. More specifically, plaintiff testified that three or four times per day, apparently without warning, he would begin to perspire so profusely that perspiration would drip from the back of his head. These episodes were so severe that he had to change shirts after each occurrence. Record at 43–45. Further, plaintiff testified that about once a day, apparently without warning, his hands would begin to shake so severely that he could not perform simple tasks such as, for example, writing a check. Record at 70. A neighbor testified that the episodes of shaking and sweating could go on for up to an hour at a time. Record at 92–93. When these complaints were included in the hypothetical question, Mr. Horan testified that there existed no suitable sedentary gainful employment that plaintiff could be expected to perform. Record at 99, 102–03. Mr. Horan did testify, however, that there did exist suitable work for plaintiff even if it is assumed that he does perspire somewhat more than the average person, and even if his hands do shake on occasion; in short, so long as neither problem occurs excessively or frequently, there is work plaintiff can perform. Record at 106–07. The essential question, then, is whether the ALJ was justified in relying upon a hypothetical question not containing plaintiff's own version of these impairments—that is, of frequent, excessive, and uncontrollable shaking of the hands and sweating of the upper body—in determining that there exists sedentary work that plaintiff can perform.

■ The court believes the ALJ's hypothetical was proper because he was justified in concluding that there was little or no credible medical evidence in the record to support plaintiff's claims regarding shaking and sweating. These complaints were raised as a basis upon which to predicate a finding of disability for the first time by plaintiff in his testimony at the hearing. The ALJ was correct in insisting upon medical documentation for these complaints, *see* 20 C.F.R. § 404.1512(b), and

gave plaintiff sixty days from the date of the hearing within which to submit such evidence. Record at 109. Plaintiff subsequently submitted a letter from Dr. Haley, his family physician, in which Dr. Haley stated that he and plaintiff had discussed plaintiff's "excessive perspiration from the upper part of his torso, and the uncontrollable shaking of his hands ... each and every time Mr. Luthi came to the undersigned's office ... the dates of which are contained in his medical chart,...." A copy of this medical chart was also entered into evidence. Record at 367–73.

The ALJ found the records remarkable, however, not for what they revealed but for what they failed to reveal. The records covered the period June 26, 1980 through May 20, 1985 and contained at least seventy-five entries. But the records reflect at most two or three entries regarding shaking and sweating, and a reasonable factfinder could have readily concluded therefrom that plaintiff had overstated the severity of these conditions. The ALJ found it further noteworthy that no other physician who examined plaintiff mentioned these problems, despite the fact that they were claimed to have persisted at "excessive" and "uncontrollable" levels over a period of roughly five years. Dr. Overesch, for example, listed in his October 1984 report ten specific complaints expressed to him by plaintiff during that examination: the list fails to contain any reference to excessive or uncontrollable shaking or sweating.

Aside from Dr. Haley's submission, the only other evidence before the ALJ on this subject was of a non-medical nature, and included the testimony of a neighbor, *see supra* at 283, as well as letters from a co-worker and a supervisor at Park College. Record at 361, 364. Though these pieces of evidence suggest that plaintiff's hands did shake on occasion, and that plaintiff did at times find it necessary to change his shirt during the day, this evidence cannot go proxy for a medical judgment that plaintiff perspires and shakes so frequently

and so excessively as to render him disabled for the purposes of Title II.

The ALJ, in sum, was correct in formulating the hypothetical the way he did, taking into account the fact that plaintiff suffers from some episodic shaking and sweating, but not relying wholly on plaintiff's rather more hyperbolic account of these occurrences. The hypothetical on which the ALJ relied contained those, and only those, impairments the existence of which was supported by substantial evidence on the record before him. *See Metcalf v. Heckler*, 800 F.2d 793, 796 n. 1 (8th Cir.1986) (citation omitted). Therefore, Mr. Horan's opinion that there exist sedentary jobs which plaintiff can perform is a valid one, and the Secretary has thus met his burden. *See supra* at 282.[3]

The court has carefully considered the record and the briefs of the parties in this case, and has concluded that the decision of the Secretary is supported by substantial evidence. It is therefore

ORDERED that the Secretary's motion for summary judgment is granted, and plaintiff's denied.

---

3. In his brief before the court, plaintiff argues that by failing to apprise plaintiff that he intended to take the testimony of a vocational expert at his hearing, "the Secretary deprived him [plaintiff] of his fundamental right to Procedural Due Process of Law guaranteed by the Sixth Amendment of the Constitution." Plaintiff's Brief at 18. Elsewhere, plaintiff claims that the Secretary's omission violated his rights under the fourteenth amendment. *See* Plaintiff's Motion for Remand at 1. However stated, the argument is wholly without merit. The sixth amendment's guarantees apply to criminal proceedings, of which the present is obviously not one. Though it is true that the fourteenth amendment's guarantee of procedural due process requires that persons in plaintiff's position be given a fair opportunity to be heard, such opportunity was clearly afforded plaintiff here. He knew that the ALJ would seek the testimony of a vocational expert because, as plaintiff himself maintains in his own brief, it would have been inappropriate in this case for the ALJ to have relied on the Medical-Vocational Guidelines alone. *See* Plaintiff's Brief at 23. Further, plaintiff's counsel was afforded the opportunity to cross-examine the vocational expert once he had given his testimony, and counsel chose not to do so. Record at 108.