811 F.2d 605
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Robert O. GEORGE, Plaintiff-Appellant,
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant-Appellee.
 No. 85-1996.
 United States Court of Appeals, Sixth Circuit.
 Dec. 4, 1986.
 
 Before KENNEDY and MILBURN, Circuit Judges, and BROWN, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Plaintiff-appellant Robert O. George appeals from a district court order affirming the final decision of the Secretary of Health and Human Services denying his application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. Sec. 423. The final decision of the Secretary is that plaintiff, although unable to perform his past relevant work, has the residual functional capacity to perform a limited range of sedentary work. Because substantial evidence in the record as a whole supports the Secretary's decision, we affirm.
 
 I.
 
 2
 On September 22, 1982, plaintiff filed an application for disability benefits alleging that he had been disabled since August 4, 1982, due to "heart, diabetes." Plaintiff's application was denied initially and upon reconsideration. Plaintiff then requested and was granted a de novo hearing before an Administrative Law Judge ("ALJ"), which was conducted on July 6, 1983. The ALJ heard the testimony of plaintiff and a vocational expert and received in evidence medical reports from four doctors who examined plaintiff.
 
 
 3
 Plaintiff was born on May 11, 1924, and has an eleventh grade education. Plaintiff last worked on August 4, 1982, as a dispatcher for the J.L. Hudson Company. His job required him to sit at a desk and dispatch delivery trucks. He had previously worked as a route analyst, a job that involved the performance of time studies of delivery routes.
 
 
 4
 Plaintiff testified that he suffers from high blood pressure, chest pain, diabetes, back pain, and swollen ankles. When his blood pressure is elevated, he has headaches, chest pains, and becomes "shaky." He suffers from shortness of breath, back pain, and numbness in his feet. In the year prior to the hearing, plaintiff suffered spells of "swooning" or "passing out" approximately three times. He is nervous and has difficulty coping with stress.
 
 
 5
 Plaintiff testified that his medical problems, when combined with the rigors of employment, cause him stress, lack of concentration, confusion, and frustration. He is unable to prepare a tax return, keep a check book, or discuss work with superiors. He might, however, be able to perform a job receiving truck driver's records.
 
 
 6
 Plaintiff further testified that his various ailments preclude him from doing work around his home and that he no longer does most household maintenance chores. He is, however, able to perform functions such as replacing light bulbs and changing furnace filters. He played golf once in the year prior to the hearing, but he found it difficult to complete nine holes.
 
 
 7
 On October 1, 1982, plaintiff's treating physician, Dr. Robert Landsdorf, submitted responses to specific questions regarding plaintiff's condition. Dr. Landsdorf, a general practitioner, reported recent blood pressure readings of 160/90, 170/85, and 160/100. He also reported complaints of chest pain, but noted that plaintiff had not suffered a myocardial infarction. The only evidence of peripheral vascular disease noted was some decrease of pulses.
 
 
 8
 On August 30, 1982, Dr. R.J. Hurwitz, Dr. Landsdorf's associate, submitted a brief report. Dr. Hurwitz reported that plaintiff had been treated for hypertension, heart disease, mild diabetes, chronic lumbar myositis, degenerative disc disease, and obesity. Dr. Hurwitz also reported that plaintiff's blood pressure "runs between 160-180/100-110" and that plaintiff's cardiogram showed anterolateral ischemia. Dr. Hurwitz strongly suggested that plaintiff retire "due to the pressure of his occupation."
 
 
 9
 On July 1, 1983, Dr. Oscar Apoian, plaintiff's treating physician, prepared a handwritten medical report. Dr. Apoian diagnosed stenosis of the right internal carotid artery, hiatal hernia, ischemia of the anterolateral wall, left ventricular strain, tachycardia, hypertension, congestive heart failure, and diabetes. Dr. Apoian concluded that plaintiff is "totally and permanently disabled for the rest of his life."
 
 
 10
 On November 1, 1982, Dr. Mary Wood, a consultative physician, reported the results of her examination of plaintiff. Dr. Wood diagnosed back pain, hypertension and Type II maturity onset diabetes mellitus, noninsulin dependent. Dr. Wood noted no complications from the diabetes or hypertension other than Grade II fundoscopic changes. Plaintiff's cardiac status was "well compensatory with no sign of congestive heart failure." Neurological examinations were essentially normal, with no motor deficit, sensory impairment or reflex changes.
 
 
 11
 On February 4, 1983, Dr. Wood reported the results of a second examination of plaintiff. Dr. Wood diagnosed accelerated hypertension, mild to moderate chronic obstructive pulmonary disease, Type II maturity onset, noninsulin dependent, diabetes mellitus, and atypical chest pain. Dr. Wood interpreted the resting EKG as normal, but noted that the stress test was limited due to shortness of breath. Dr. Wood further noted that on the treadmill plaintiff was able to walk two minutes at the speed of 1.7 miles per hour at a grade of ten percent before he was stopped by shortness of breath, without chest pain and diagnostic ST segment depression. Dr. Wood concluded that plaintiff is physically capable of performing "light desk work."
 
 
 12
 Miriam Mossoff, a vocational expert, defined plaintiff's employment as a dispatcher as being sedentary, semiskilled work and his route analyst position as light, semiskilled work. Ms. Mossoff was then asked a hypothetical question by the ALJ. The ALJ's hypothetical asked Ms. Mossoff to consider plaintiff's age, education, and work experience, his uncontrolled hypertension and resulting headaches, his chest pains, his hypoglycemia which causes fainting, the occlusion of arteries to plaintiff's head which interferes with his ability to perform intricate mental operations and results in poor work performance, his inability to concentrate in a stressful work environment, his inability to cope with criticism from coworkers, subordinates, and supervisors and the resulting increase in blood pressure and chest pain, and his inability to be on his feet more than two hours each day or lift more than ten pounds. Ms. Mossoff responded that, although plaintiff could not perform his past work, there were approximately 5,000 low-stress sedentary jobs in the Detroit area that plaintiff could perform, such as table clerk, insurance payment clerk, and file review clerk. On cross-examination, plaintiff's counsel asked Ms. Mossoff to assume the degree of impairment testified to by plaintiff. Ms. Mossoff responded that there are no jobs that plaintiff could perform.
 
 
 13
 The ALJ found that plaintiff suffers from "hypertension, diabetes, chest pain of uncertain etiology, moderate obesity, and apparently acute episodes of anxiety, but that he does not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4." The ALJ further found that these impairments prevented plaintiff from returning to his past relevant work, but that he retained the residual functional capacity for a limited range of sedentary work. Relying on 20 C.F.R. Sec. 404.1569 and Rule 201.03, Table No. 1, Appendix 2, Subpart P, Regulations No. 4, as a guide and Ms. Mossoff's testimony, the ALJ found that there are a significant number of jobs in the national economy which plaintiff could perform with little or no vocational adjustment, including payroll clerk and file review clerk.
 
 
 14
 The ALJ's decision was adopted as the final decision of the Secretary and was affirmed by the district court.
 
 II.
 
 15
 Pursuant to 42 U.S.C. Sec. 405(g), judicial review of the Secretary's decision is limited to determining whether there is substantial evidence in the record as a whole to support the decision. The reviewing court "may not try the case de novo, nor resolve conflicts in evidence, nor decide questions of credibility." Garner v. Heckler, 745 F.2d 383, 387 (6th Cir.1984). The Secretary is charged with finding the facts relevant to an application for disability benefits, and the Secretary's findings, if supported by substantial evidence, are conclusive. 42 U.S.C. Sec. 405(g).
 
 
 16
 Substantial evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). "Substantiality of the evidence must be based on the record taken as a whole" and " 'must take into account whatever in the record fairly detracts from its weight.' " Garner, 745 F.2d at 388 (quoting Beavers v. Secretary of Health, Education and Welfare, 577 F.2d 383, 387 (6th Cir.1978)).
 
 
 17
 Once it was established that plaintiff could not perform his past relevant work, the burden shifted to the Secretary to show that he "can perform other substantial gainful work, and that there are jobs in the national economy which [he] can perform." Hephner v. Mathews, 574 F.2d 359, 362 (6th Cir.1978); see also Richardson v. Secretary of Health and Human Services, 735 F.2d 962, 964 (6th Cir.1984) (per curiam); O'Banner v. Secretary of Health, Education and Welfare, 587 F.2d 321, 322 (6th Cir.1978). To meet this burden, there must be "a finding supported by substantial evidence that [plaintiff] has the vocational qualifications to perform specific jobs." O'Banner, 587 F.2d at 323; see also Richardson, 735 F.2d at 964.
 
 
 18
 Plaintiff contends that Ms. Mossoff's response to the ALJ's hypothetical does not constitute substantial evidence because the ALJ erroneously assumed that plaintiff is able to perform low-stress sedentary work. Where the ALJ's hypothetical actually portrays the claimant's physical and mental impairments, the vocational expert's response that the claimant can perform substantial gainful employment constitutes substantial evidence. Dumas v. Schweiker, 712 F.2d 1545, 1553-54 (2d Cir.1983); McMillian v. Schweiker, 697 F.2d 215, 221 (8th Cir.1983). Where, on the other hand, the assumptions contained in the ALJ's hypothetical are not supported by the record, the vocational expert's response that the plaintiff can perform substantial gainful employment does not constitute substantial evidence. McMillian, 697 F.2d at 222.
 
 
 19
 There is substantial evidence in the record to support a finding that plaintiff can perform low-stress sedentary work. Dr. Wood, a consultative physician, conducted two extensive examinations of plaintiff and concluded that he is capable of performing light desk work. Dr. Wood's conclusion is supported by detailed clinical findings and is entitled to some weight. See Gray v. Heckler, 760 F.2d 369, 373 (1st Cir.1985); see also Sitar v. Schweiker, 671 F.2d 19, 22 (1st Cir.1982). Furthermore, Dr. Wood's opinion is consistent with Dr. Hurwitz's opinion that plaintiff should retire due to the "pressure" of his occupation.
 
 
 20
 Dr. Apoian, plaintiff's treating physician, prepared a brief, conclusory letter stating that plaintiff is totally and permanently disabled. However, the determination of disability is the prerogative of the Secretary, not the treating physician, and the Secretary was not bound by Dr. Apoian's conclusory statement. See Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir.1984). This is particularly true since Dr. Apoian's opinion was not supported by any detailed medical or clinical findings. See King v. Heckler, 742 F.2d 968, 973 (6th Cir.1984). Thus, the ALJ did not err in making the challenged assumption part of the hypothetical.
 
 
 21
 Plaintiff also contends that Ms. Mossoff's response to the hypothetical posed by plaintiff's counsel established his inability to perform gainful employment. However, the hypothetical question posed by plaintiff's counsel contained different assumptions than those posed by the ALJ. Plaintiff's counsel asked the vocational expert to assume the degree of impairment testified to by plaintiff. Having found plaintiff's testimony regarding his functional restrictions exaggerated, the ALJ was entitled to rely on the vocational expert's prior opinion that plaintiff can perform substantial gainful employment. Dumas, 712 F.2d at 1554.
 
 III.
 
 22
 For the reasons stated, the judgment of the district court is AFFIRMED.