**Ace E. HARBOUR, Plaintiff,**

v.

**Otis R. BOWEN, Secretary of Department of Health and Human Services, Defendant.**

**No. 86–4456–CV–C–5.**

United States District Court, W.D. Missouri, C.D.

April 30, 1987.

Timothy C. Harlan, Columbia, Mo., for plaintiff.

Paul P. Cacioppo, Chief Counsel, Region VII, Dept. of Health & Human Services, Kansas City, Mo., Robert B. Schneider, Asst. U.S. Atty., Kansas City, Mo., for defendant.

## ORDER

SCOTT O. WRIGHT, Chief Judge.

Before the Court are cross-motions for summary judgment. This suit involves two applications for benefits under the Social Security Act. The first is an application for disability insurance benefits under Title II of the Act, 42 U.S.C. §§ 401 *et seq.* The

---

second is an application for Supplemental Security Income (SSI) benefits based on disability under Title XVI of the Act, 42 U.S.C. § 1381 *et seq.*

On December 31, 1985, following a hearing, an Administrative Law Judge (ALJ) rendered a decision unfavorable to plaintiff. The ALJ found that plaintiff was not under a "disability" as defined in the Social Security Act. On May 29, 1986, the Appeals Council of the Social Security Administration denied plaintiff's request for review. Thus, the decision of the ALJ stands as the final decision of the Secretary. It is the conclusion of the Court that the Secretary's denial of benefits must be affirmed.

### Factual Background

Plaintiff, 25 years old at the time of the administrative hearing, filed his application for Social Security Disability Benefits on February 12, 1985, alleging disability due to a seizure disorder and back pain.

According to the medical evidence in the record, plaintiff was examined on March 10, 1981, by Dante O. Garrido, M.D. Dr. Garrido stated that plaintiff had a seizure disorder, grand mal, and mild right hemiparesis. Plaintiff had averaged seizures once every two years but had gone without a seizure for five years prior to the date of the examination.

On October 15, 1983, plaintiff was admitted to St. Mary's Health Center in Jefferson City, Missouri, after developing recurrent seizures. Plaintiff was treated with IV Dilantin and IV Valium and observed overnight in Intensive Care. Plaintiff had not had seizures for a number of years and his physician, Dr. Hooshmond, had attempted to reduce his Dilantin level. Plaintiff was feeling well on discharge and had no other problems.

On April 3, 1985, plaintiff was admitted to Columbia Regional Hospital after suffering a seizure. Physical examination revealed that plaintiff's extremities, joints, peripheral pulses, back and spine were within normal limits. Plaintiff exhibited a very mild wide-based gait with mild to minimal impairment of tandem gait. There was mild right hemiparesis and mild to minimal right hemiatrophy. Plaintiff was admitted to neurologic evaluation and observation. An EEG was compatible with a clinical diagnosis of seizure disorder. While plaintiff's Phenobarbital blood level was therapeutic, his Dilantin level was virtually undetectable. The final diagnosis was congenital encephalopathy, seizure disorder secondary to encephalopathy, and seizure occurrence secondary to alcohol consumption and probable failure to take medication as prescribed.

On July 22, 1985, plaintiff underwent psychological testing by Stanley P. Hutson, Ph.D. His scores on the WAIS–R intelligence test were as follows: Verbal I.Q.—88, Performance I.Q.—71, Full Scale I.Q.—79. Dr. Hutson attributed the 17–point difference between verbal and performance to difficulty with manual manipulation. Dr. Hutson noted that although plaintiff used his left hand well, his right hand was uncoordinated. Dr. Hutson also believed that the test indicated problems other than intelligence deficiency, such as learning disability. He further noted that plaintiff had graduated from high school, thus indicating that he was able to compensate. Dr. Hutson concluded that plaintiff's intellectual and physical problems would limit his vocational ability.

On March 1, 1985, plaintiff was examined by J.D. Morris, D.O. Plaintiff related that he was on Phenobarbital and Dilantin and that he had an occasional alcoholic beverage. He stated that he graduated from high school and that his average grades were approximately C–. He stated that he had seizures since approximately age 5 and that he had had a total of ten seizures over his lifetime. Dr. Morris' examination revealed that plaintiff's extremities had a full range of motion, with atrophy and smallness of the right hand and foot. Plaintiff could not walk on his heels as a result of prior surgery, and had difficulty walking on his toes. Dr. Morris' impression was that plaintiff had: generalized tonic/clonic seizures; spastic type of right hemiparesis, most likely secondary to cerebral palsy; and a possible Dyke-Davidoff-Masson syndrome.

Plaintiff was treated by Ahmad Hooshmond, M.D., from June, 1983 until September, 1983. His diagnosis was grand mal seizure and right hemiparesis most likely secondary to perinatal brain injury. Dr. Hooshmond stated that the frequency of plaintiff's seizures was under good control while plaintiff was under his care.

On February 15, 1985, Peter Boyer, M.D., stated that he last treated plaintiff in November, 1983, for his seizure disorder. Dr. Boyer stated that he was hospitalized at that time because he had a seizure following a reduction of his medications. Dr. Boyer was not aware of any other medical problem which would significantly reduce plaintiff's ability to work.

On March 17, 1986, plaintiff underwent a psychological evaluation by Karen S. Yopp, M.Ed., a psychological examiner. She noted that plaintiff drove himself into Columbia and arrived on time. Plaintiff told Ms. Yopp that he had worked as a truck loader for three years until he quit because his family moved. Since that time, he worked as a dishwasher in area restaurants. He related to Ms. Yopp that he experienced pain in his leg and back. Plaintiff was administered the Minnesota Multiphasic Personality Inventory (MMPI). The results of this test revealed that plaintiff was experiencing an acute disturbance which had taken a toll on his self-esteem. Ms. Yopp concluded that plaintiff's clinical interview and MMPI results were consistent with a Schizotypal Personality Disorder and she further believed that he met the criteria of Section 12.08 of the Mental Impairment Listings.

Plaintiff testified at the hearing held on November 20, 1985. He stated that he had his last grand mal seizure in April, 1985. Following a grand mal seizure, plaintiff testified that he felt bad for 10 to 14 days. Prior to April, 1985, plaintiff's last seizure had been in October, 1983. Plaintiff also testified that his right leg would swell if he sat or stood for any length of time. Plaintiff complained of dizziness once a week and lower back pain. He said that he must lay down six hours a day to relieve his back and leg pain. Plaintiff drove a car and lived by himself in a trailer. He did half of his own cooking, laundry and grocery shopping. He bowled every six months and went hunting every three months. Plaintiff stated that he last worked for three months at a country club washing dishes. Prior to that, plaintiff had worked at another restaurant for approximately two years busing tables and washing dishes. His duties also included running an electric slicer and grinder, cleaning the floors and carrying garbage, preparing salads, and supervising two busboys. Plaintiff stated that he stopped working at the restaurant because it closed down.

Plaintiff's mother, Wilma Harbour, also testified at the hearing. She stated that her son was sometimes uncoordinated and unresponsive, but that she did not know if he suffered small seizures in addition to the grand mal seizures.

Arthur E. Smith, Ph.D., testified as a vocational expert. Dr. Smith had been in vocational counseling for 26 years and had experience making recommendations of placement for people suffering from seizures. It was his opinion that plaintiff could not be employed if he had seizures more than four times a year.

The ALJ asked Dr. Smith to assume that plaintiff had a grand mal seizure in 1983 and 1985 but that, otherwise, his seizures were controlled by Dilantin and Phenobarbital. He further asked Dr. Smith to assume that there were side effects from the medication and semiparalysis on the right side affecting the right hand, that plaintiff had surgery on his right heel which limited his ability to stand for long periods of time and affected his balance and mobility, and that he had to sit and stand alternatively and switch positions every hour or so. Dr. Smith replied that there were a number of sedentary occupations which plaintiff would be able to perform with those limitations.

The ALJ then asked Dr. Smith to further assume that plaintiff's Verbal I.Q. was 88, Performance I.Q. was 71 and Full Scale I.Q. was 79. Dr. Smith testified that this would not change his opinion. Dr. Smith went on to list weigher, bottling line at-

tendant, industrial caller, contribution solicitor, rewind operator, checker, examiner, inspector and tester as examples of positions which plaintiff could perform. These were based on actual surveys of jobs in the Illinois and Missouri areas. Dr. Smith further testified that if plaintiff actually had to lay down frequently during the day, he was not employable.

The ALJ concluded that plaintiff's exertional and nonexertional limitations would still allow him to perform several jobs available in the national economy and that he was not "disabled" as defined under the Social Security Act.

### Standard of Review

The scope of judicial review of the Secretary's decision is very narrow; the Secretary's ruling is conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Alexander v. Weinberger*, 536 F.2d 779 (8th Cir.1976). Substantial evidence is defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971); *McMillian v. Schweiker*, 697 F.2d 215, 221 (8th Cir.1983). This standard of review, however, is "more than a mere rubberstamp of the Secretary's decision." *Id.* at 220.

The claimant has the initial burden of establishing the existence of a disability as defined by 42 U.S.C. § 423(d)(1). Once the claimant establishes that his impairment is so severe that he cannot return to his former occupation, the burden shifts to the Secretary to prove that the claimant can perform some other kind of substantial gainful activity. *O'Leary v. Schweiker*, 710 F.2d 1334, 1337 (8th Cir.1983); *McDonald v. Schweiker*, 698 F.2d 361, 364 (8th Cir.1983). To meet this burden, the Secretary need not find a specific job opening for the claimant, but must prove that substantial gainful activity is realistically within the mental and physical capabilities of the claimant. *McMillian*, 697 F.2d at 221.

### Discussion

The issue before the Court is whether there is substantial evidence in the record to support the ALJ's conclusion that plaintiff has the residual functional capacity to perform sedentary work and that plaintiff's recurrent seizures are not disabling. It is the opinion of this Court that the ALJ's conclusions are supported by substantial evidence in this record.

First, in determining whether plaintiff was disabled, the ALJ drew the following conclusions:

"The claimant has not engaged in substantial gainful activity since February 5, 1985. His combination of impairments are severe but do not meet or medically equal any section of the Appendix 1, Listing of Impairments. Although the claimant alleges frequent seizures, the medical and other evidence indicates that claimant has only had seizures in 1983 and 1985. They appeared to have been precipitated by either a reduction in medication, alcohol abuse, or a failure to take medication. The claimant had testified that he no longer drinks alcohol. The medical and other evidence does not substantiate frequent seizures. While the claimant has a learning disability, he graduated from high school and worked from 1977 until 1984. The claimant was apparently able to successfully perform his job at Jefferson Station as a busboy/dishwasher as his testimony indicates that he was not terminated from that job due to any limitation on work activity. Although the claimant alleges side effects from the medication he takes for his seizures, the activities he testified to such as doing his cooking and laundry, driving, and shopping, show that his side effects are not severe. He is able to drive in spite of his drowsiness ... The frequency of claimant's seizures do not appear such as to significantly limit work activity except that he cannot work around unprotected heights or dangerous machinery. The claimant cannot perform prolonged standing and walking because of his status post foot surgery condition and must alternately stand and sit every hour. He is also limited to work that will accomodate the effects of 200 mg. of Phenobarbital daily. In addi-

tion, because of his right sided paralysis, the claimant is limited to jobs which only requires manipulation with his left dominant hand. From an exertional standpoint, the claimant is restricted to sedentary work as he cannot perform prolonged standing or walking, or lift more than 10 pounds. Since he cannot perform prolonged sitting and cannot manipulate with his right nondominate hand, he has a residual functional capacity for less than the full range of sedentary work."

Thus, the ALJ concluded that while plaintiff has a severe impairment and is unable to perform his past work as a dishwasher, plaintiff is not under a "disability" since plaintiff has the residual functional capacity to perform sedentary work. The Court concludes that this conclusion by the ALJ is supported by the record in this case.

Second, the testimony by the vocational expert, Arthur Smith, likewise, supports the ALJ's conclusion. In response to a hypothetical assuming that plaintiff had a seizure disorder which was controlled by medication, right sided paralysis, side effects from medication, that plaintiff could not perform prolonged standing or walking and had to change position, Smith testified that there were a number of sedentary jobs the claimant could perform such as a bottling line weigher, quality control attendant, industrial caller, contribution solicitor, rewind operator, checker and examiner. He stated that there were approximately 30,000 such jobs in a 200–mile radius of Columbia, Missouri. Thus, this testimony, along with the fact that plaintiff is 25 years old, hunts four times a year, bowls every six months, and has never lost a job because of his seizure disorder, all lend support the ALJ's conclusion that plaintiff has the residual functional capacity to perform some sedentary work.

Accordingly, it is hereby

ORDERED that the decision of the Secretary is affirmed.