**Meredith D. WILLIAMS, Sr., Appellant,**

v.

**Otis R. BOWEN, M.D., Secretary of Health & Human Services, Appellee.**

No. 88–2597.

United States Court of Appeals, Eighth Circuit.

Submitted May 8, 1989.

Decided July 20, 1989.

Robert W. Pratt, Des Moines, Iowa, for appellant.

John E. Beamer, Asst. U.S. Atty., Des Moines, Iowa, for appellee.

Before JOHN R. GIBSON and MAGILL, Circuit Judges, and HEANEY, Senior Circuit Judge.

HEANEY, Circuit Judge.

Meredith Williams appeals from a district court order affirming a denial of disability benefits under 42 U.S.C. § 405(g) and supplemental security income benefits under 42 U.S.C. § 1381 *et seq.* We reverse.

## BACKGROUND

Meredith Williams is a forty-nine year old man who seeks social security benefits for medical impairments of severe bronchial asthma and chronic obstructive pulmonary disease dating back to 1984. Williams worked as a cement finisher for over twenty years but had to stop working in November 1984 because of his medical impairments. Williams attempted to return to work in April 1985, but quit after two days, again because of his medical limitations. The Secretary classified his effort as an unsuccessful work attempt.

Williams' bronchial asthma was first diagnosed by his treating physician, Dr. Darrel Devick, in March 1984 when he was hospitalized for an acute episode of shortness of breath. Williams was hospitalized a second time in 1984, for two days, due to hemorrhagic esophagitis, hematemesis, and asthmatic bronchitis. Throughout that year, Williams saw Dr. Devick on a regular basis, often complaining of shortness of breath on exertion.

In 1985, Williams was hospitalized by Dr. Devick for shortness of breath and acute respiratory distress in January and October. By this time, Williams had been prescribed Proventil to relieve bronchospasms, Prednisone, a steroid used to reduce asthma attacks, Theo Dur, a bronchodilator, Alupent inhaler, a bronchodilator, Xanax, an anti-anxiety medication, and Tagamet, a medication for ulcers.

In April 1986, Williams was again hospitalized. Dr. D. Shumate, a physician at Des Moines General Hospital, examined Williams and found that Williams was suffering from chronic obstructive pulmonary disease with asthmatic bronchitis. Williams was placed on an extensive regime of bronchodilators, including nebulized Alupent, administered through a breathing machine. After a week, Williams was able to walk in his room and in the hospital hallways with only rare wheezing. Williams filed his initial claim for disability during this hospitalization.

On April 30, Dr. Devick wrote to Disability Determination Services concerning Williams' claim. He stated:

[Williams] has severe asthmatic bronchitis which has been increasing in severity over the past two years. He has been hospitalized on several occasions because of acute episodes of bronchospasms which were potentially life threatening. His chronic lung disease has progressed to the point that he has exertional dyspnea even during normal times. During his episodes of bronchospasms he is acutely dyspneic, even when not active. * * * He currently is back home and continues to have exertional dyspnea with mild exertion such as walking a short distance on the level. * * * I would consider Mr. Williams to, be completely disabled.

In August, Dr. Devick again wrote to the Disability Determination Services indicating that Williams continued to suffer from severe exertional dyspnea even at rest and that his bronchospasms were controlled only with the use of several bronchodilators.

Williams testified at the hearing that he experienced severe shortness of breath and chest pain two to three times per week unprovoked by exertion. He also described severe asthma attacks which occur approximately every two weeks. At that time, Williams was using his breathing machine

at home every four hours. While away from home, he used a small inhaler approximately once every hour. Although Dr. Devick had encouraged Williams to take small walks, Williams testified that he could not walk farther than a block without experiencing shortness of breath, coughing and wheezing. He stated that he must sit for long periods of time in order to catch his breath and on several occasions, has been unable to walk home. He felt he could not stand for more than forty-five minutes, could not bend over, stoop, squat or lift anything over five to ten pounds without experiencing shortness of breath. Williams' wife, a licensed practical nurse, also testified before the ALJ and corroborated Williams' testimony.

The ALJ denied Williams' claim for disability benefits, finding that he did not suffer from an impairment which met or equaled a listed impairment in 20 C.F.R. Part 404, Subpart P, No. 4, Appendix 1, and that he retained the residual functional capacity to perform light work.

## DISCUSSION

In reviewing the Secretary's decision to deny disability benefits, we look to see if the decision is supported by substantial evidence in the record as a whole. *Thomas v. Sullivan*, 876 F.2d 666, 668 (8th Cir. 1989); *McMillian v. Schweiker*, 697 F.2d 215, 220 (8th Cir.1983). After carefully reviewing the record, we find that substantial evidence does not exist in this record to support the finding that Williams' chronic obstructive pulmonary disease does not meet the listed respiratory impairment. In fact, we believe that the ALJ failed to consider the listing for chronic pulmonary insufficiency, even though the presence of this impairment was supported by the treating physician's diagnosis and medical evidence.

In determining Williams' claim, the ALJ only compared the medical evidence with the listing of asthma. Sections 3.03 A and 3.03 B of Appendix 1 provide that a person with asthma will be found disabled if (a) a person (with the height of 66–67 inches) has a forced expiratory volume (FEV1)

equal to or less than 1.3 liters and a maximum voluntary ventilation (MVV) of 52 liters per minute; or (b) a person has episodes of severe asthmatic attacks in spite of prescribed treatment, occurring at least once every two months or at least six times a year. In May and September 1986, Williams underwent pulmonary function studies. In May, Williams had a FEV1 of 1.91 liters and an MVV of 41 liters per minute. In September, Williams had a FEV1 of .77 liters. No MVV measurement was taken at that time. On the basis of these tests, the ALJ correctly held that Williams' asthma did not quite meet the listing under section 3.03 A.

The ALJ evaluated Williams' impairment under the listing for asthma because "Dr. Devick has indicated that the claimant's respiratory problems are best evaluated under section 3.03 on asthma." We cannot locate any basis for this claim in the record. Although Dr. Devick indicated in a letter to Williams' representative that Williams' pulmonary functioning did not quite meet the requirements of section 3.03 A, he did not state that the Secretary should evaluate Williams' impairments only under that section. Dr. Devick and Dr. Shumate clearly diagnosed Williams as suffering from both chronic obstructive lung disease and bronchial asthma.

Apart from the reference to Dr. Devick's letter, the ALJ gave no other rationale for not considering whether Williams met the listing for section 3.02, "chronic pulmonary insufficiency." This section provides in part:

C. Chronic Impairment of gas exchange (due to any cause). With:

1. Steady-state exercise blood gases demonstrating values of $PaO_2$ and simultaneously determined $PaCO_2$ measured at a workload of approximately 17 ml. $O_2$/kg./min. or less of exercise, equal to or less than the values specified in Table III–A or III–B or III–C.

## TABLE III—A

[Applicable at test sites less than 3,000 feet above sea level]

**450**

| Arterial PCO$_2$ (mm. Hg) | Arterial PO$_2$ and equal to or less than (mm. Hg) |
|---|---|
| 30 or below | 65 |
| 31 | 64 |
| 32 | 63 |
| 33 | 62 |
| 34 | 61 |
| 35 | 60 |
| 36 | 59 |
| 37 | 58 |
| 38 | 57 |
| 39 | 56 |
| 40 or above | 55 |

On two separate occasions, Williams tested with gas exchange values that met the listing in section 3.02 C(1). On January 14, 1985, Williams tests showed the presence of significant arterial hypoxemia with an admission PO$_2$ level of 45.2 and a PCO$_2$ level of 32.2. In April 1986, Williams had a PO$_2$ level of 50.3 and a PCO$_2$ level of 38.6. A residual functional capacity assessment performed on May 27, 1986 by Dr. Hepplewhite, a social security physician, concluded that "[a]t the time of [Williams' April] hospitalization, *he met the listings as far as his arterial gas findings were concerned.*" The medical evidence indicated that Williams suffered from chronic obstructive pulmonary disease. The test results show that his impairment was significant. Even the Secretary's physician acknowledged that Williams' arterial blood gas test results indicated a disability listed in Appendix 1. Yet, the ALJ did not address this issue in his opinion.

The Secretary argues that the ALJ did not err in rejecting the arterial blood gas test results because they were not obtained during acceptable exercise testing. Section 3.02 C appears to require that blood gas tests be obtained during some type of exercise. We disagree, however, that the tests are not dispositive in this case. First, the ALJ did not reject the arterial blood gas test results as invalid. In fact, the ALJ cited these results in his opinion. He merely failed to compare the test results to the listings. Because there is substantial medical evidence that Williams has chronic obstructive pulmonary disease, the ALJ should have determined whether the medical findings on Williams' blood gas ex-

change rates met the required level of severity under 20 C.F.R. Part 404, Subpart P, Appendix 1, § 3.02 C.

Second, Williams' arterial blood gases were measured when he was hospitalized for acute respiratory distress. Under these circumstances, it is not surprising that his physician did not order Williams to perform an exercise treadmill test to validate the results to the Secretary's satisfaction. If the Secretary felt that the test results did not accurately depict the severity of Williams' obstructive lung disease, it had the authority to order conforming arterial gas exchange tests. 20 C.F.R. Part 404, Subpart P, Appendix 1, § 3.00 E. Yet, no one challenged the validity of the test results found in the record until this appeal. We find the Secretary's attempt to discredit the test results at this stage of the proceedings to be unconvincing.

Williams provided the Secretary with evidence indicating that he qualified for disability under section 3.02 C. The Secretary allowed the arterial blood gas test results to remain undisputed. Thus, we hold that there is insufficient evidence in this record to support the ALJ's finding that Williams' respiratory impairments do not meet the listings in the regulations. On the contrary, we find that Williams' chronic obstructive lung disease meets the listing contained in section 3.02 C.

Accordingly, we reverse the judgment and remand this case to the district court with directions to remand to the Secretary for an award of benefits in the appropriate amount.